**<u>Exhibit I</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| SOMETHING SWEET ACQUISITION, INC., *et al.*,[1] | Case No. 21-10992 (CSS) (*Joint Administration Requested*) |
| Debtors. | **Re: D.I. ____** |

**INTERIM ORDER AUTHORIZING DEBTORS TO (A) USE CASH
COLLATERAL, (B) OBTAIN SENIOR SECURED SUPERPRIORITY
POSTPETITION FINANCING, AND (C) GRANT ADEQUATE
<u>PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF</u>**

Upon the motion ("**<u>Motion</u>**")[2] (D.I. ___) of the above-captioned debtors and debtors in possession (collectively, the "**<u>Debtors</u>**" or "**<u>Borrowers</u>**") in these chapter 11 cases, seeking authority to, among other things:

(1)    obtain postpetition loans, advances and other financial accommodations on an interim basis for a period through and including the date of the Final Hearing from Copenhagen Acquisition, LLC ("**<u>Lender</u>**") in accordance with that certain Debtor-in-Possession Secured Multi-Draw Term Loan Promissory Note dated as of July ____, 2021, between Something Sweet Acquisition, Inc., and Something Sweet, Inc., the Borrowers and Debtors-in-Possession, and Copenhagen Acquisition LLC, as Lender, as may be amended, modified, supplemented, replaced, or refinanced from time to time in accordance with the terms thereof (the "**<u>Note</u>**"), a copy of which is attached hereto as **<u>Exhibit C</u>**, and in accordance with this

---

[1]    The Debtors in these jointly administered cases are Something Sweet Acquisition, Inc. (Tax ID: 1256); and Something Sweet, Inc. (ID: 8621).

[2]    Capitalized terms used but not defined herein are defined in <u>Exhibit A</u> attached hereto.

Order, secured by security interests in and liens upon all of the Aggregate Collateral pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code;

        (2)     modify the automatic stay to the extent hereinafter set forth;

        (3)     grant the Lender superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all post-petition Obligations;

        (4)     grant the Lender liens pursuant to Section 364(c)(2) and (3) of the Bankruptcy Code in respect of the post-petition Obligations, in accordance with the priorities set forth in the Lien Priority Schedule (as defined below);

        (5)     grant adequate protection to the Prepetition Secured Parties on account of their liens on the Prepetition Collateral in accordance with the terms of the Interim Order; and

        (6)     schedule the final hearing on the Motion.

This Order constitutes findings of fact and conclusions of law under Fed. R. Bankr. P. 7052 and will take effect and be fully enforceable as of the Petition Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Sections 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), and objections, if any, having been withdrawn, resolved, or overruled by the Court, **THE MOTION IS GRANTED ON AN INTERIM BASIS, AS PROVIDED FOR HEREIN, AND THE COURT HEREBY FINDS THAT:**

A.     <u>Petitions</u>: On July 2, 2021 (the "**<u>Petition Date</u>**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have retained possession of their property and continue to manage their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.      _Jurisdiction and Venue_.  The Court has jurisdiction over these chapter 11 cases under 28 U.S.C. § 1334.  Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue over the Motion is proper under 28 U.S.C. § 1409(a).

C.      _Debtors' Acknowledgements and Agreements_.  Subject to Paragraph 9 of this Order, the Debtors admit, stipulate, acknowledge and agree that:

(a)     _Factoring Agreements_.  Prior to the commencement of these chapter 11 cases, Accord Financial, Inc. (the "**Factor**") made loans, advances and provided other financial accommodations to the Debtors pursuant to the terms and conditions set forth in (1) the Master Purchase and Sale Agreement dated July 14, 2017, as modified and amended (the "**MPSA Agreement**") under the terms of which the Factor agreed to purchase the accounts receivable of the Debtors, (2) the Revolving Note and Financing Agreement (Inventory), dated as of July 14, 2017, as modified and amended (the "**RLOC Note**") under the terms of which the Factor agreed to make a revolving line of credit to the Debtors, and (3) other agreements, amendments, documents and instruments executed and/or delivered to or in favor of the Factor (together with the MPSA Agreement and RLOC Note, the "**Factoring Documents**").

(i)     _Prepetition Factoring Obligations Amount_.  As of the Petition Date, the aggregate principal and interest owing by the Debtors to the Factor in connection with the Factoring Documents was not less than $649,372.19 (collectively, the "**Prepetition Factoring Obligations**").  The Prepetition Factoring Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Debtors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtors do not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Prepetition Factoring Obligations.

(ii)    _Prepetition Factoring Priority Collateral_.  As of the Petition Date, the Prepetition Factoring Obligations were secured pursuant to the Factoring Documents by a valid, perfected, enforceable and non-avoidable first priority security interest granted by the Debtors

3

to the Factor upon all of the Debtors' assets, except the CES Priority Collateral (as defined below) (the "**Factoring Priority Collateral**"). The Factoring Priority Collateral shall include the CES Priority Collateral if CES (as defined below) is paid in full pursuant to the terms of that certain *Intercreditor and Subordination Agreement*, dated as of May 22, 2019, between the Debtors, the Factor, CES and the Subordinated Lender (as defined below) (the "**ICA**"). Pursuant to the terms of the ICA, all rights, title to and lien of Factor in and to the Factoring Priority Collateral are and shall be first, senior and prior to that of CES in Factoring Priority Collateral at any time securing the Prepetition Factoring Obligations. The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Factor's liens, claims or security interests in the Factoring Priority Collateral.

(b)     *Capital Equipment Solutions, LLC Loan Documents.* Prior to the commencement of these chapter 11 cases, Capital Equipment Solutions, LLC ("**CES**") provided an equipment loan (the "**Equipment Loan**") to the Debtor Something Sweet, Inc. pursuant to the terms of that certain (i) Term Promissory Note dated as of February 13, 2019, and (ii) Security Agreement dated as of February 13, 2019 (as amended and restated, collectively, the "**CES Documents**").

(i)     *Prepetition CES Obligations Amount*. As of the Petition Date, the aggregate principal and interest owing by Debtor Something Sweet, Inc. to CES in connection with the CES Documents was not less than $553,887.00 (collectively, the "**CES Obligations**"). The CES Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtor Something Sweet, Inc., and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtor Something Sweet, Inc. does not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the CES Obligations.

    (ii)    *Prepetition CES Collateral.*  As of the Petition Date, the CES Obligations were secured pursuant to the CES Documents by a valid, perfected, enforceable and non-avoidable security interest in all assets of Debtor Something Sweet, Inc. (the "**CES Collateral**"), including all of Debtor Something Sweet, Inc.'s machinery and equipment, and all accessions, accessories, attachments, spare parts, change parts, tooling, plant support equipment, platforms, piping and electrical wiring relating thereto, and all Proceeds thereof (the "**CES Priority Collateral**").  The CES Priority Collateral shall include the Factoring Priority Collateral if the Factor has been paid in full pursuant to the terms of the ICA.  Pursuant to the terms of the ICA, all rights, title to and lien of CES in and to the CES Priority Collateral are and shall be first, senior and prior to that of Factor in CES Priority Collateral at any time securing the CES Obligations.  The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of CES's liens, claims or security interests in the CES Collateral.

    (c)    *COF Loans Acquisition, LLC Loan Documents.*  Prior to the commencement of these chapter 11 cases, COF Loans Acquisition, LLC (the "**Subordinated Lender**") provided loans to Debtor Something Sweet, Inc. as reflected in that certain Loan and Security Agreement by and between Subordinated Lender and Debtor Something Sweet, Inc. dated May 22, 2019 (as amended, supplemented or otherwise modified from time to time with the consent of the Factor, the "**Credit Agreement**").

    (i)    *Prepetition Subordinated Lender Obligations Amount.*  As of the Petition Date, the aggregate principal and interest owing by Debtor Something Sweet, Inc. to Subordinated Lender in connection with the Credit Agreement was not less than $6,730,000.00 (collectively, the "**Subordinated Lender Obligations**").  The Subordinated Lender Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Debtors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or

any other applicable law, and the Debtors do not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Subordinated Lender Obligations.

(ii) *Prepetition Subordinated Lender Collateral*.  As of the Petition Date, the Subordinated Lender Obligations were secured pursuant to the Credit Agreement by a valid, perfected, enforceable and non-avoidable junior security interest and blanket lien granted by Debtor Something Sweet, Inc. to the Subordinated Lender upon all of Debtor Something Sweet, Inc.'s assets (the "**Subordinated Lender Collateral**").  Pursuant to the terms of the ICA, the Subordinated Lender subordinated all security interests, liens, encumbrances and claims in the Subordinated Lender Collateral securing the Subordinated Lender Obligations to all security interests, liens, encumbrances and claims of Factor and CES in the Subordinated Lender Collateral.  The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Subordinated Lender's liens, claims or security interests in the Subordinated Lender Collateral.

(iii) *Subordinated Lender Consent*.  Subordinated Lender has consented to the terms of this Order and is entitled to adequate protection as set forth herein pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code for any decrease in the value of its interests in the Prepetition Collateral from and after the Petition Date.

D.    Findings Regarding the Postpetition Financing.

(a)    *Postpetition Financing*.  The Debtors have requested from Lender and Lender is willing to extend, certain loans, advances and other financial accommodations on the terms and conditions set forth, in this Order and the Postpetition Documents.

(b)      *Need for Postpetition Financing.*   The Debtors need to incur Postpetition Debt, as provided herein, through the conclusion of the Final Hearing in order to prevent immediate and irreparable harm to the Debtors' estates and enhance the possibility of maximizing the value of the Debtors' business in connection with an orderly sale or other disposition of the Debtors' Aggregate Collateral.

(c)      *No Credit Available on More Favorable Terms.*   The Debtors are unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code sufficient to finance their business. Except as provided below, the Debtors are unable to obtain credit allowable under Sections 364(c)(1), (c)(2), or (c)(3) of the Bankruptcy Code on terms more favorable than those offered by Lender.   An immediate need exists for the Debtors to obtain Postpetition Debt in order to administer and preserve the value of their estates pending a sale or other disposition of the Debtors' assets and avoid immediate and irreparable harm to the Debtors, their estates, and creditors.

(d)      *Budget.*   The Debtors have prepared and delivered to Lender an initial Budget, which has been reviewed by the Debtors and their management.   The Debtors represent that the Budget is achievable in accordance with the terms of the Postpetition Documents. Lender is relying upon the Debtors' compliance with the Budget in accordance with the Note, the other Postpetition Documents and this Order in determining to enter into the postpetition financing and other arrangements provided for herein.

(e)      *Business Judgment and Good Faith Pursuant to Section 364(e).*   The terms of the Postpetition Documents and this Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to a debtor in possession and other financial accommodations, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair

7

consideration.  Any credit and other financial accommodations extended under the terms of this Order shall be deemed to have been extended in good faith by Lender, as that term is used in Section 364(e) of the Bankruptcy Code.

(f)      *Good Cause*.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) preserve and maximize the value of the Debtors' estates for the benefit of all the Debtors' creditors, and (b) avoid immediate and irreparable harm to the Debtors, their creditors, their business, and their assets.

(g)      *Immediate Entry*.  Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2) and Local Rule 4001-2.  No party appearing in these chapter 11 cases has filed or made an objection to the relief sought in the Motion or the entry of this Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

(h)      *Notice*.  The notice provided by the Debtors of the Motion, the hearing on the Motion, and the entry of this Order complies with the requirements of Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014, and Local Rules 2002-1 and 4001-2, and is appropriate under the circumstances.

Based upon the foregoing, and the record of the hearing on approval of this Order, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED AND THAT:**

1.          <u>Authorization to Use Cash Collateral</u>.  The Debtors are authorized to use Cash Collateral through the Termination Date solely in accordance with the terms of this Order.

2.          <u>Authorization to Incur Postpetition Debt</u>.

*(a)*          <u>Postpetition Debt</u>.  On an interim basis, the Debtors are authorized to borrow Term Loans (as defined in the Note), in accordance with the procedures set forth in paragraph 2(d) of this Order, in an amount not to exceed $50,000.00.  Subject to entry of the Final Order, the Debtors are authorized to borrow Term Loans, in accordance with the procedures set forth in paragraph 2(d) of this Order, in an amount not to exceed $500,000.00 in the aggregate. For the avoidance of doubt, the Lenders' Fees and Expenses shall constitute Postpetition Debt and the Debtors are obligated to pay the Lenders' Fees and Expenses as set forth in paragraph 17 of this Order pursuant to the terms of the Note.  The Lenders' Fees and Expenses shall be paid from the proceeds of any sale(s) of the Debtors' assets.

*(b)*          <u>Postpetition Documents</u>.  The Debtors are authorized and have agreed to (1) execute the Postpetition Documents, including, without limitation, all documents that Lender finds reasonably necessary to implement the transactions contemplated by the Postpetition Documents, and (2) perform its obligations under, and comply with all of the terms and provisions of the Postpetition Documents and this Order.  Upon execution and delivery thereof, the Postpetition Documents will constitute valid and binding obligations of the Debtors enforceable in accordance with their terms.  To the extent there exists any conflict among the terms of the Motion, the Postpetition Documents, and this Order, this Order will govern and control.

*(c)*          <u>Permitted Uses of Postpetition Debt</u>.  The Debtors are authorized and have agreed to incur Postpetition Debt solely:  (1) in accordance with the terms and provisions of this Order; (2) to the extent required to pay those expenses enumerated in the Budget, including,

9

without limitation, the Carve-Out, as and when such expenses become due and payable, subject to the Permitted Variance and the terms of the Postpetition Documents; (3) to pay Allowable 506(b) Amounts in connection with the Note and Lender Charges; and (4) as expressly permitted pursuant to the Postpetition Documents.  Notwithstanding the foregoing, if Lender advances monies to the Debtors and the Debtors use any such monies other than in accordance with the terms and provisions of this Order, then such advances will be considered Postpetition Debt for purposes of this Order, without prejudice to Lender's rights under the Postpetition Documents and the terms of this Order, including to call and enforce any default or Event of Default as a result of noncompliance with the Budget or the terms of this Order or the Postpetition Documents.

(d)    <u>Procedure for the Debtors' Use of Postpetition Debt</u>.  Borrowing Requests shall be made by the Debtors in accordance with the Budget. The Debtors may request the Term Loans (as defined in the Note) pursuant to written notice (which may be by email) delivered to the Lender by or before 2:00 p.m. (New York time) two (2) Business Days prior to the proposed borrowing date (or such shorter period as the Lender may agree) (a "**<u>Borrowing Request</u>**"). Subject to the terms and conditions of the Postpetition Documents and this Order, Lender shall make the proceeds of such Term Loans available to the Debtors on the applicable date of funding of such Term Loan by transferring immediately available funds equal to such proceeds to an account designated in writing by the Debtors consistent with their existing cash management system.  The DIP Commitment (as defined in the Note) shall be permanently reduced upon the making of a Term Loan in an amount equal to such Term Loan.  Any principal amount of the Term Loan which is repaid or prepaid may not be reborrowed.

(e)    <u>Budget</u>.  The Debtors and Lender have agreed to an initial budget attached hereto as <u>Exhibit B</u> (the "**<u>Budget</u>**").  Lender and the Prepetition Secured Parties have no obligation to permit the use of the Postpetition Debt or Cash Collateral, and the Debtors shall have

no authority to use Postpetition Debt or Cash Collateral, hereunder other than in accordance with the Budget, subject to the Permitted Variance (as defined below) and as set forth in this Order and the Note.

(f)     Budget Covenant.   Every two (2) weeks following entry of this Order, on the first business day following such two-week period, the Debtors will provide Lender with an updated Budget for the subsequent 13-week period.   The initial Budget and each subsequent Budget shall be in form and substance acceptable to Lender; *provided, however*, that unless and until Lender has approved such updated budget in its discretion, the Debtors shall still be subject to and be governed by the terms of the initial Budget or subsequent, updated Budget, as applicable, then in effect in accordance with this Order (each such approved budget, a "**Supplemental Approved Budget**").  Every two (2) weeks following entry of this Order, on the fifth business day following such two-week period, the Debtors also shall provide to Lender and the Prepetition Secured Parties a budget variance report/reconciliation (the "**Budget Variance Report**") setting forth in reasonable detail actual disbursements for the prior two-week period, together with a statement certifying compliance with the Permitted Variance (as defined below) set forth below.  The Debtors shall ensure that at no time there is a negative variance of 15% or more from the "Operating Cash Outflow," tested every week on a cumulative rolling four (4) week basis (the "**Permitted Variance**").

(g)     Delivery of Documentation.  The Debtors shall deliver to Lender, and counsel to Lender, all variance reports, Budgets, forecasts, and all other legal or financial documentation that are either (i) required to be provided by the Debtors to Lender pursuant to the Note or (ii) reasonably requested by Lender (or its legal and financial advisors).  All variance reports shall be delivered to counsel for Lender every two weeks via electronic mail.

(h)  Certain Additional Material Terms of Postpetition Debt.

(i)  Maximum Amount.  The maximum principal amount of Postpetition Debt outstanding may not at any time exceed the DIP Commitment, subject to the terms and conditions of the Note.

(ii)  Interest.  Each Loan (as defined in the Note) will bear interest at a per annum rate equal to thirteen percent (13%). Accrued interest on each Term Loan shall be payable in cash at maturity (whether by acceleration or otherwise).

(iii)  Maturity.  The Postpetition Debt will mature and be due and payable in full on the earliest of (a) the date that is the **eighteenth** month anniversary of the Petition Date, (b) the sale of all or substantially all of the Debtors' assets in one or more transactions, (c) the effective date of a Chapter 11 plan in these chapter 11 cases and (d) the Termination Date.

(iv)  Prepetition Documents. The Factoring Documents, CES Documents and Credit Agreement (collectively, the "Prepetition Secured Debt Documents") will remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of any Cash Collateral consented to by Lender pursuant to Section 363 of the Bankruptcy Code or additional financing by Lender pursuant to Section 364 of the Bankruptcy Code; provided, however, that nothing in this Order is intended or shall be deemed to prohibit the Debtors from seeking to reject any executory contracts or unexpired leases pursuant to Section 365 of the Bankruptcy Code.

(i)  Milestones.  The Debtors agree that each Debtor shall take all actions necessary to cause each of the following to occur (each a "Milestone" and collectively, the "Milestones"):

(i)  No later than **eight (8)** business days after the Petition Date, this Order shall be entered by the Bankruptcy Court.

(ii)  No later than **twenty-one (21)** days after the entry of this Order, the Final Order approving the Note and the financing contemplated hereby shall be entered by the Bankruptcy Court.

(iii)  On or before the date that is **fourteen (14)** days after the Petition Date, (i) the confidential information memorandum (subject to supplementation) with respect to a 363 Sale by the Debtors shall have been finalized and delivered to potential bidders and (ii) an electronic dataroom (subject to supplementation) for such 363 Sale shall have been opened.

(iv)  On or before the date that is **fourteen (14)** days after the Petition Date, the Debtors shall file a motion (the "Sale Motion") for approval of an order establishing bidding procedures (the "Bidding Procedures Order"), which Bidding Procedures Order shall be in form and substance acceptable to Lender in its sole discretion.

(v)    **Twenty-one (21)** days after the Sale Motion is filed, the Bidding Procedures Order shall be entered by the Bankruptcy Court (subject to the Court's availability).

(vi)    On or before the date that is **seventy (70)** days after the Petition Date, the Debtors will conduct one or more auctions for all, or substantially all, of the Debtors' assets pursuant to, and in accordance with, the Bidding Procedures Order.

(vii)    On or before the date that is **seventy-five (75)** days after the Petition Date, the Debtors will obtain entry of an order of the Court, in form and substance reasonably satisfactory to Lender ("Sale Order"), authorizing and approving one or more sales of all, or substantially all, of the assets of the Debtors pursuant to one or more definitive purchase agreements in form and substance acceptable to the Lender in its sole discretion, including, without limitation, with respect to the purchase price, any conditions to closing, the closing date, and other terms and conditions (each, a "Purchase Agreement").

(viii)    On or before the date that is **eighty-five (85)** days after the Petition Date, the Debtors shall have consummated one or more sales of all, or substantially all, of the assets of the Debtors, pursuant to, and in accordance with, the terms of the Sale Order and the Purchase Agreement(s), and, except as provided in the Financing Orders, remitted all of the proceeds thereof to the Lender for application in accordance with the terms of the DIP Documents.

(j)        Superpriority Administrative Expense Status; Postpetition Liens.

The Postpetition Debt is hereby granted superpriority administrative expense status under Section 364(c)(1) of the Bankruptcy Code, with priority over all costs and expenses of administration of any kind whatsoever, whether now existing or hereafter arising, including, without limitation, those specified in, ordered pursuant to or arising under, *inter alia*, sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise (whether incurred in these chapter 11 cases and any successor cases) other than the Carve-Out.  In addition, pursuant to Sections 364(c)(2) and (3) of the Bankruptcy Code, and consistent with the lien priority schedule attached hereto as **Exhibit D** (the "**Lien Priority Schedule**") and the terms of this Order and the Final Order, Lender is hereby granted the Postpetition Liens to secure the Postpetition Debt in the Postpetition Collateral.  The Postpetition Liens: (1) are in addition to the Prepetition Liens; (2) are, by this Order hereby deemed to be, and shall be for all purposes, properly perfected, valid, and enforceable liens without any other or further action by the Debtors or Lender, and without the execution, filing, or recordation of any financing statement, security agreement, control agreement, mortgage, title notation, or other document or instrument; (3) under Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, are Priority Liens (subject only to Permitted Priority Liens) without any further action by the Debtors or Lender, and without the execution, delivery, filing, or recordation of any financing statements, security agreements, control agreements, title notations, mortgages, or other documents or instruments; (4) will not be subject to any security interest or lien that is avoided and preserved under Section 551 of the Bankruptcy Code; (5) will remain in full force and effect notwithstanding any subsequent conversion or dismissal of the chapter 11 cases; (6) will not be subject to Section 510(c) of the Bankruptcy Code; and (7) shall rank junior to the Carve-Out and those senior, valid, unavoidable liens of the Prepetition Secured Parties as set forth on the Lien Priority Schedule.

Without limiting the foregoing, the Debtors must deliver to Lender any such financing statements, security agreements, control agreements, mortgages, title notations, and other documents and instruments as Lender may request from time to time in its discretion.  Without limiting the foregoing, Lender has, and will be deemed to have, a perfected Postpetition Lien on all existing deposit accounts of the Debtors and any new deposit account that the Debtors may establish on or after the date hereof without any further action by the Debtors or Lender.

(k)    <u>Prohibition Against Additional Debt</u>.  The Debtors may not incur or seek to incur debt secured by a lien which is equal to, or superior to the Lender's Postpetition Liens, or that is given superpriority administrative expense status under Section 364(c)(1) of the Bankruptcy Code, unless, in addition to the satisfaction of all requirements of Section 364 of the Bankruptcy Code:  (1) Lender has consented to such order; (2) at the time such an order is entered, there is no Postpetition Debt outstanding, and no obligation of Lender to extend Postpetition Debt; or (3) such credit or debt is first used to, and is sufficient to, cause the Aggregate Debt to be Paid in Full.

3.    <u>Adequate Protection of Interests of Prepetition Secured Parties in the Prepetition Collateral and the Prepetition Liens</u>.  The Prepetition Secured Parties have consented to the terms of this Order and are entitled to adequate protection as set forth herein and to the extent required under Sections 361 and 363 of the Bankruptcy Code for any decrease in the value of their interests in the Cash Collateral from and after the Petition Date on account of the Debtors' use of such Cash Collateral.

(a)    <u>Adequate Protection Liens</u>.  Subject to the Carve-Out and the lien priorities set out in **<u>Exhibit D</u>**, the Prepetition Secured Parties are hereby granted the Adequate Protection Liens as security for any diminution in the value of their respective interests in Cash Collateral.  The Adequate Protection Liens: (1) are in addition to the Prepetition Liens; (2) are, by

15

this Order hereby deemed to be, and shall be for all purposes, properly perfected, valid, and enforceable liens without any other or further action by the Debtors or Prepetition Secured Parties, and without the execution, filing, or recordation of any financing statement, security agreement, control agreement, mortgage, title notation, or other document or instrument; and (3) will remain in full force and effect notwithstanding any subsequent conversion or dismissal of the chapter 11 cases.  Without limiting the foregoing, the Debtors are authorized to, and must, execute and deliver to the Prepetition Secured Parties any such financing statements, security agreements, control agreements, mortgages, title notations and other documents and instruments as the Prepetition Secured Parties may request from time to time in its discretion in respect of the Adequate Protection Liens.

(b)    Allowed Section 507(b) Claims.  If and to the extent the adequate protection of the interests of the Prepetition Secured Parties in Cash Collateral granted pursuant to this Order proves insufficient, the Prepetition Secured Parties will have allowed claims under Section 507(b) of the Bankruptcy Code, subject to the Carve-Out, in the amount of any such insufficiency, with priority over (1) any and all costs and expenses of administration of the chapter 11 cases (other than Lender's claims under Section 364 of the Bankruptcy Code) that are incurred under any provision of the Bankruptcy Code and (2) the claims of any other party in interest under Section 507(b) of the Bankruptcy Code.

4.    Termination Date; Rights and Remedies.

(a)    Effect of Termination Date.  Unless extended by the Court upon the written agreement of Lender and the Prepetition Secured Parties, upon the Termination Date without further notice or order of the Court, and subject to the terms of this Order with respect to the Carve-Out: (1) the Debtors' authorization to use Cash Collateral and to incur Postpetition Debt

hereunder will automatically terminate; and (2) at Lender's and/or any of the Prepetition Secured Parties' election the Postpetition Debt will be immediately due and payable in full in cash.

      *(b)*    <u>Rights and Remedies</u>.  Notwithstanding the provisions of Section 362 of the Bankruptcy Code and without application or motion to the Bankruptcy Court, at Lender's election, the occurrence of any of the following shall constitute an "**<u>Event of Default</u>**" hereunder:

> (i)     Debtors (A) shall fail to make any payment of principal of, or interest on, or fees owing in respect of, the Term Loans or any of the other Obligations when due and payable, or (B) shall fail to pay or reimburse the Lender for any expense reimbursable hereunder or under any other Postpetition Document within three (3) Business Days following the demands for such reimbursement or payment.

> (ii)     Debtors shall fail to comply with any of the provisions of (A) Section 11 of the Note and such failure shall remain uncured for a period of five (5) Business Days, or (B) Section 12 of the Note.

> (iii)     Debtors shall fail to comply with any of the other provision of the Note or any of the other Postpetition Documents (other than any provision embodied in or covered by any other clause of Section 13 of the Note) and the same if capable of being remedied, shall remain unremedied for ten (10) days after the earlier of the date a senior officer or a Debtor becomes aware of such failure and the date written notice of such default shall have been given by the Lender to Debtors.

> (iv)     Except for defaults occasioned by the filing of the chapter 11 cases and defaults resulting from obligations with respect to which the Bankruptcy Code prohibits a Debtor from complying or permits a Debtor not to comply, a default or breach shall occur after the Petition Date under any other agreement, document or instrument to which a Debtor is a party that is not cured within any applicable grace period therefor, and such default or breach (A) involves the failure to make any payment when due in respect of any Indebtedness (other than

17

the Obligations) of the Debtors in excess of $100,000.00 in the aggregate, or (B) causes, or permits any holder of such Indebtedness or a trustee to cause, Indebtedness or a portion thereof in excess of $100,000.00 in the aggregate to become due prior to its stated maturity or prior to its regularly scheduled dates of payment, regardless of whether such default is waived, or such right is exercised, by such holder or trustee.

(v)     Any representation or warranty in the Note or in any other Postpetition Document or in any written statement, report, financial statement or certificate made or delivered to the Lender by the Debtors is untrue or incorrect in any material respect (except that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof) as of the date when made or deemed made.

(vi)    Debtors shall bring a motion in the chapter 11 cases seeking to incur debt secured by a lien which is equal to, or superior to the Lender's Postpetition Liens, or that is given superpriority administrative expense status under Section 364(c)(1) of the Bankruptcy Code, unless, in addition to the satisfaction of all requirements of Section 364 of the Bankruptcy Code: (1) Lender has consented to such order; (2) at the time such an order is entered, there is no Postpetition Debt outstanding, and no obligation of Lender to extend Postpetition Debt; or (3) such credit or debt is first used to, and is sufficient to, cause the Aggregate Debt to be Paid in Full.

(vii)   The filing of a chapter 11 plan or plans that does not contain a provision for the termination of Lender's commitment to make Term Loans and the indefeasible repayment in full in cash of all the Obligations under the Note on or before the effective date of such plan or plans and that is not otherwise acceptable to the Lender in its sole discretion.

(viii)  The filing of any motion by the Debtors seeking, or the entry of any order in the chapter 11 cases in respect of, any claim or claims under Section 506(c) of the Bankruptcy Code against or with respect to any Aggregate Collateral or the Debtors' failure to

18

timely oppose any such motion filed by any other party in interest.

(ix)    The proposal of a sale, without the Lender's consent in its sole discretion, of all or substantially all of a Debtors' assets either through a sale under Section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the chapter 11 cases, or otherwise, that does not provide for the indefeasible payment in full in cash of the Obligations and termination of the Lender's commitment to make Term Loans, and is not otherwise acceptable to the Lender in its sole discretion.

(x)    The occurrence of any postpetition judgments, liabilities, claims or events that, individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect on the Lender's likelihood of repayment, in the Lender's sole discretion.

(xi)    The filing by the Debtors of a motion seeking entry of an order authorizing the appointment of an interim or permanent trustee in the chapter 11 cases or the appointment of an examiner in the chapter 11 cases with expanded powers to operate or manage the financial affairs, business, or reorganization of the Debtors or the Debtors' failure to timely oppose any such motion filed by any other party in interest.

(xii)    The filing by the Debtors of a motion seeking entry of an order dismissing the chapter 11 cases or converting the chapter 11 cases to cases under chapter 7 of the Bankruptcy Code or the Debtors; failure to timely oppose any such motion filed by any other party in interest.

(xiii)    The filing by the Debtors of a motion seeking entry of an order in the chapter 11 cases avoiding or requiring repayment of any portion of the payments made on account of the Obligations owing under the Note or the other Postpetition Documents or the Debtors' failure to timely oppose any such motion filed by any other party in interest.

(xiv)    The filing by the Debtors of a motion seeking entry of an order in the chapter 11 cases granting any other super-priority administrative claim or Lien equal to or superior to that granted to the Lender (other than any such claim or Lien permitted by the Interim or

19

Final Orders), unless (i) consented to in writing by the Lender in its sole discretion or (ii) the Obligations are indefeasibly paid in full in cash and the Lender's commitment to make Term Loans are terminated or the Debtors' failure to timely oppose any such motion filed by any other party in interest.

(xv)    The filing by the Debtors of a motion seeking entry of an order granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow any creditor (other than the Lender) to execute upon or enforce a Lien on any Aggregate Collateral or the Debtors' failure to timely oppose any such motion filed by any other party in interest.

(xvi)   This Order or the Final Order shall be stayed, amended, modified, reversed, or revoked in any respect without the Lender's prior written consent (which consent shall be in its sole discretion).

(xvii)  There shall be commenced any suit or action against the Lender by or on behalf of (i) a Debtor or (ii) any official committee in the chapter 11 cases or any other party, in each case, that asserts a claim or seeks a legal or equitable remedy that would have the effect of subordinating the claim or Lien of the Lender below the priority reflected in the Lien Priority Schedule attached as **Exhibit D** to this Order or recovering any amounts paid or payable to the Lender, and, if such suit or action is commenced by any Person other than a Debtor, officer, or employee of a Debtor, such suit or action shall not have been dismissed or stayed within 10 days after service thereof on the Lender, as applicable, and, if stayed, such stay shall have been lifted.

(xviii) Failure of the Debtors to comply with any Milestone set forth in this Order.

(xix)   Any provision of any Postpetition Document shall for any reason cease to be valid, binding and enforceable in accordance with its terms (or a Debtor shall challenge the enforceability of any Postpetition Document or shall assert in writing, or engage in any action or inaction based on any such assertion, that any provision of any Postpetition Document has ceased to be or otherwise is not valid, binding and enforceable in accordance with its terms), or any

Lien created under any Postpetition Document shall cease to be a valid and perfected first priority Lien (except as otherwise permitted herein or in the Financing Orders) in any of the Aggregate Collateral purported to be covered thereby.

(xx)    A breach by a Debtor of any of the terms of this Order or the Final Order.

Upon the occurrence of an Event of Default and following five (5) business days after delivery of the Carve-Out Trigger Notice (as defined below) (the "**Remedies Notice Period**"), the Lender may, upon written notice to the Debtors and subject to the terms of this Order: (i) terminate the DIP Commitment of Lender with respect to further Term Loans; (ii) declare all or any portion of the Obligations, including all or any portion of any Term Loan, to be forthwith due and payable; and (iii) exercise any rights and remedies under the Postpetition Documents or at law or in equity, all in accordance with this Order or the Final Order, as applicable; *provided, however*, that during such five (5) business day period, and subject to the terms of this Order with respect to the Carve-Out, Lender will have no obligation whatsoever to advance any Postpetition Debt to the Debtors or allow the use of the Cash Collateral.  During the Remedies Notice Period or thereafter, the Debtors, Committee or U.S. Trustee may seek an expedited hearing for the purpose of obtaining an order authorizing the Debtors' continued use of the DIP Commitment. Unless the Court orders otherwise during the Remedies Notice Period, at the end of the Remedies Notice Period, the Debtors shall automatically, without further notice or order of the Court, no longer have the right to use any portion of any Term Loan.  Upon the occurrence of an Event of Default and the exercise by Lender of its rights and remedies under the Note and the other Postpetition Documents pursuant to clause (iii) above and subject to this Order or the Final Order, as applicable, the Debtors shall assist Lender in effecting a sale or other disposition of the Aggregate Collateral upon such terms as are designed to maximize the proceeds obtainable from such sale or other disposition.

Except as otherwise provided for in the Note, this Order or by applicable law, the Debtors waive: (a) presentment, demand and protest and notice of presentment, dishonor, notice of intent to accelerate, notice of acceleration, protest, default, nonpayment, maturity, release, compromise, settlement, extension or renewal of any or all commercial paper, accounts, contract rights, documents, instruments, chattel paper and guaranties at any time held by Lender on which any Debtor may in any way be liable, and hereby ratifies and confirms whatever Lender may do in this regard; (b) all rights to notice and a hearing prior to the Lender taking possession or control of, or the Lender's replevy, attachment or levy upon, the Aggregate Collateral or any bond or security that might be required by any court prior to allowing the Lender to exercise any of its remedies; and (c) the benefit of all valuation, appraisal, marshaling and exemption laws.

5.     Carve-Out; Professional Fee Escrow.

*(a)*     Carve-Out Terms.  As used in this Order, the "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) for each Carve-Out Professional, an aggregate amount not to exceed the lesser of (A) the aggregate amount provided in the applicable line item in the Budget for such Carve-Out Professional for the period commencing on the Petition Date and ending on the Termination Date and (B) the aggregate amount of allowed fees and expenses that accrued during the period commencing on the Petition Date and ending on the Termination Date; and (iii) allowed fees and expenses for Carve-Out Professionals in an aggregate amount not to exceed $25,000 incurred after delivery by Lender of the Carve-Out Trigger Notice, to the extent allowed by this Court (the amounts set forth in this clause (iii) being the "**Post Carve-Out Trigger Notice Cap**").  For purposes of this Order, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by

Lender to counsel to the Debtors, the U.S. Trustee, and counsel to the Committee (if any), which notice may be delivered following the occurrence and during the continuation of an Event of Default, stating that the Post Carve-Out Trigger Notice Cap has been invoked.

        *(b)*    <u>Carve-Out Usage</u>.  No portion of the Carve-Out (including the Professional Fee Escrow) and no Postpetition Debt or Aggregate Collateral, including Cash Collateral, may be used to pay any fees or expenses incurred by any Person, including the Debtors, any Committee, or any Professional, in connection with claims or causes of action adverse (or which claim an interest adverse) to (i) Lender, or any of its affiliates, or any of its respective rights or interests in the Aggregate Collateral, the Postpetition Documents or (ii) the Prepetition Secured Parties, including, without limitation, (1) preventing, hindering, or delaying Lender's enforcement or realization upon any of the Aggregate Collateral or the exercise of its rights and remedies under this Order, any Postpetition Document, or applicable law, in each case, once an Event of Default has occurred, (2) using or seeking to use any Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Lender's and the Prepetition Secured Parties' written consent, or (3) objecting to, or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any Prepetition Debt, Postpetition Debt, any Postpetition Document, or any mortgages, liens, or security interests with respect thereto or any other rights or interests of Lender, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against Lender; <u>provided</u>, <u>however</u>, that the foregoing shall not apply to costs and expenses, in an aggregate amount not to exceed $15,000, incurred by the Committee's Carve-Out Professionals in connection with the investigation of a potential Challenge in accordance with Paragraph 9 of this Order.

6.      Carve-Out Procedure.  The Debtors shall, upon written request of Lender, provide to Lender a written report ("**Carve-Out Report**") disclosing its then current good faith estimate of the aggregate amount of unpaid professional fees, costs, and expenses accrued or incurred by the Professionals through the date of the Carve-Out Report.  Nothing herein may be construed as consent by Lender to the allowance of any fees, costs, or expenses of the Professionals or will affect Lender's right to object to the allowance and payment of any such fees, costs, or expenses, or Lender's right to the return of any portion of the Carve-Out that is funded with respect to fees, costs, and expenses for a Professional that are approved on an interim basis, but that are later denied on a final basis.  No Professional will be entitled to any portion of the Carve-Out allocated for any other Professional in the Budget.

7.      Funding of Professional Fee Reserve Account.  The Debtors are authorized to wire transfer funds, on a weekly basis, to the Bielli & Klauder LLP's client trust account in an amount equal to, but not to exceed, the amounts set forth in the "Legal" and "Investment Advisors – Peakstone" line items of the Budget for each such week (the "**Professional Fee Escrow**").  The Debtors may only fund the Professional Fee Escrow (i) prior to the Termination Date, up to, but not to exceed the line items of the Budget for each week prior to the Termination Date, and (ii) after the Termination Date, the amount of the Post Carve-Out Trigger Notice Cap.  No Cash Collateral shall be transferred to or deposited into the Professional Fee Escrow in a manner or amount that is inconsistent with the Budget or other than in accordance with the terms of this Order.  Except as provided in this Order, including with respect to the Post Carve-Out Trigger Notice Cap, on and after the Termination Date, no funds of the Debtors (including Cash Collateral) shall be transferred or deposited into the Professional Fee Escrow.

8.      No Surcharge.  Subject to entry of the Final Order, there shall be no surcharge of the Aggregate Collateral for any purpose unless agreed to in writing by Lender and

each of the Prepetition Secured Parties, and effective upon entry of the Final Order, the Debtors (or any trustee appointed or elected in the chapter 11 cases), on behalf of their estates, will be deemed to have waived any and all rights, benefits, or causes of action under Section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of Section 552 of the Bankruptcy Code, and under any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to, or be asserted against, Lender or any of the Aggregate Collateral.

9.    <u>Reservation of Rights; Bar of Challenges and Claims</u>.  The stipulations, admissions and waivers contained in this Order, including, without limitation, the Debtors' Stipulations, shall be binding upon the Debtors, their affiliates, and any of their respective successors in all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.  The stipulations, admissions and waivers contained in this Order, including, without limitation, the Debtors' Stipulations, shall be binding upon all other parties in interest, including the Committee, if any, and any other person acting on behalf of the Debtors' estates, unless and to the extent that a party in interest with proper standing granted by order of the Court has filed an adversary proceeding or contested matter (i) before the earlier of (a) seventy-five (75) calendar days after entry of this Order and (b) sixty (60) calendar days after the appointment of the Committee, if any, subject to further extension by written agreement of the Debtors and Lender (the "**Challenge Period**"); (ii) seeking to avoid, object to, or otherwise challenge the findings or Debtors' Stipulations regarding: (a) the validity, enforceability, extent, priority, or perfection of the Prepetition Liens or (b) the validity, enforceability, allowability, priority, secured status, or amount of the Prepetition Secured Debt (any such claim, a "**Challenge**"); and (iii) in which the Court enters a final order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter.

10.     Upon the expiration of the Challenge Period without the filing of any Challenge (or if any such Challenge is filed and overruled): (i) any and all such Challenges by any party (including, without limitation, the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these chapter 11 cases, and any chapter 7 trustee and/or examiner) shall be deemed to be forever barred; (ii) the Prepetition Secured Debt shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in these chapter 11 cases; (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, and not subject to recharacterization, subordination, or avoidance; and (iv) all of the Debtors' stipulations and admissions contained in this Order, including, without limitation, the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to Lender's claims, liens, and interests contained in this Order shall be of full force and effect and forever binding on the Debtors, the Debtors' bankruptcy estates, and all creditors, interest holders, and other parties in interest in these chapter 11 cases.

11.     If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in this Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive on all other parties in interest.  For the avoidance of doubt, initiation of a timely and procedurally proper Challenge shall preserve the Challenge only with respect to the party initiating such Challenge (and such Challenge shall be limited to the Challenge identified with specificity prior to the expiration of the Challenge Period).  If any such adversary proceeding or contested matter is timely filed and remains pending and the cases are converted to chapter 7, the chapter 7 trustee may continue to prosecute such adversary proceeding or contested matter on behalf of the Debtors' estates; *provided* that if the Challenge Period has elapsed and no timely and properly filed Challenge has been commenced either before or after

conversion of the chapter 11 cases to chapter 7 cases, or any Challenge has been resolved prior to conversion of the chapter 11 cases to chapter 7 cases, the chapter 7 trustee shall be bound by the Debtors' Stipulations or such resolution, as applicable; *provided further* that if a chapter 7 trustee is appointed prior to the expiration of the Challenge Period, such trustee shall have until the expiration of the Challenge Period to commence a Challenge.  Nothing in this Order vests or confers on any entity (as defined in the Bankruptcy Code), including any  Committee appointed in these chapter 11 cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges, *provided, however*, that the filing of a motion seeking standing to assert a Challenge and attaching the draft complaint as an exhibit thereto will toll the Challenge Period, solely with respect to the matters asserted in the draft complaint, until such motion has been decided by final order not subject to appeal.

12.    <u>Right to Credit Bid</u>.  In connection with a sale or other disposition of all or any portion of the Aggregate Collateral, whether under Sections 363, 1129 or otherwise of the Bankruptcy Code, pursuant and subject to Section 363(k) of the Bankruptcy Code, Lender will have the continuing right to use the amounts then outstanding under the Postpetition Debt to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral. Subject to the foregoing, with respect to any such sale or other disposition of all or any portion of the Aggregate Collateral, and any auction and sale process relating thereto, Lender is, and will be deemed to be, a qualified bidder for all purposes under any sale and bidding procedures, and any order approving any bidding and sale procedures, and may attend and participate at any auction and any sale hearing, in each case, without regard to any of the requirements or conditions set forth therein and without any other or further action by Lender.

13.    <u>Waiver of Right to Return/Consent to Setoff</u>.  Without the prior written consent of Lender, the Debtors will not agree or consent to any of the following: (a) to return any

Aggregate Collateral pursuant to Section 546(h) of the Bankruptcy Code; or (b) to setoff pursuant to Section 553 of the Bankruptcy Code.

14.    <u>Tax Obligations</u>.  The Debtors will timely pay or remit, as applicable, all sales tax, payroll tax, and trust fund tax obligations under applicable law from time to time that are set forth in the Budget.

15.    <u>Indemnification of Lender</u>.  The Debtors will indemnify and hold harmless Lender, in accordance with the terms of the Postpetition Documents. The Debtors' indemnification obligations to Lender shall constitute Postpetition Debt, notwithstanding the terms of Paragraph 2(i)(a) of this Order.

16.    <u>No Marshaling</u>.  Upon entry of the Final Order, in no event shall Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Aggregate Collateral.  Lender shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to Lender with respect to proceeds, products, offspring or profits of any of the Aggregate Collateral.

17.    <u>Lender's Fees and Expenses</u>.   The Debtors are hereby authorized and directed to pay all such Lenders' Fees and Expenses in accordance with this Order and the Postpetition Documents, without need for filing any application with the Court for approval or payment thereof.  The invoices for the Lender's Fees and Expenses shall be provided to counsel to the Debtors, the U.S. Trustee and counsel to any Committee (the "**<u>Fee Notice Parties</u>**"), and without the need for any further action of the Debtors and the submission of such invoices shall be an Obligation of the Debtors to Lender for the amount of Lender's Fees and Expenses reflected therein.  The invoices to be provided to the Fee Notice Parties may be in summary form, may contain redactions, and the provision of such invoices shall not constitute a waiver of the attorney-

client privilege or any benefits of the attorney work product doctrine. If no objections to payment of the requested fees and expenses are made, in writing by any of the Fee Notice Parties within the Fee Objection Period, then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors. If an objection (solely as to reasonableness) is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors.

18.    <u>Force and Effect of Prepetition Secured Debt Documents</u>.  Except as modified herein, and subject to the other provisions of this Order (including Paragraph 9 hereof) and the Bankruptcy Code, the Prepetition Secured Debt Documents will remain in full force and effect with respect to the Prepetition Secured Debt.  To the extent that there exists any conflict among the terms of the Motion, the Prepetition Secured Debt Documents, and this Order, this Order governs and controls.

19.    <u>Modification of Stay</u>.  The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit Lender or Factor, as the case may be, to perform any act authorized or permitted under or by virtue of this Order, the Note, including, without limitation, (a) to implement the postpetition financing arrangements authorized by this Order and pursuant to the terms of the Note, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Aggregate Collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Obligations, including, without limitation, all interests, fees, costs and expenses permitted under the Note, and apply such payments to the Obligations pursuant

to the Note.  In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after filing and serving with the Court and providing five (5) business days written notice (the "**Enforcement Notice**") to respective counsel for the Debtors, the Prepetition Secured Parties, counsel for the Committee (if appointed), the U.S. Trustee, and all creditors who have served Lender with written notice of a filed or recorded prepetition lien or security interest against any of the Debtors' assets in their favor, Lender shall be entitled, without further order of or application or motion to the Court and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code, to take any action and exercise all rights and remedies provided to it by this Order, the Note, including as modified, or applicable law as Lender may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the Aggregate Collateral or any other assets or properties of Debtors' estates upon which Lender has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations, consistent with the priorities reflected in the Lien Priority Schedule.

20.    <u>No Waiver</u>.  Lender will not be deemed to have suspended or waived any of its rights or remedies under this Order, the Postpetition Documents, the Bankruptcy Code, or applicable nonbankruptcy law unless such suspension or waiver is hereafter made in writing, signed by a duly authorized officer of Lender, and directed to the Debtors.  Lender's failure to require strict performance by the Debtors (or by any trustee appointed or elected in the chapter 11 cases) of any provision of this Order will not waive, affect, or diminish any right of Lender thereafter to demand strict compliance and performance therewith, and no delay on the part of Lender in the exercise of any right or remedy under this Order, the Postpetition Documents, the Bankruptcy Code, or applicable non-bankruptcy law will preclude the exercise of any right or remedy.

21.    <u>Responsible Person</u>.  By taking any actions pursuant to this Order, Lender will not be deemed to be (a) in control of the operations or liquidation of the Debtors or (b) acting as a "responsible person" with respect to the operation, management, sale, or liquidation of the Debtors.

22.    <u>Amendments</u>.    The Debtors and Lender may enter into amendments or modifications of the Postpetition Documents or the Budget without any further notice, hearing, or order of this Court; <u>provided</u>, <u>however</u>, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party in interest and (b) notice of any such amendment or modification is filed with this Court and provided to any Committee and the United States Trustee.

23.    <u>Proofs of Claim</u>.  Lender is not required to file a proof of claim with respect to any of the Postpetition Debt and the stipulations and findings set forth in this Order constitute, for all purposes, a proof of claim in respect thereof.  The Prepetition Secured Parties are not required to file proofs of claim with respect to any of the Prepetition Factoring Obligations, CES Obligations or Subordinated Lender Obligations and the stipulations and findings set forth in this Order constitute, for all purposes, a proof of claim in respect thereof.

24.    <u>Binding Effect</u>.  Except as provided in Paragraph 9 herein, this Order is binding on all parties in interest in these chapter 11 cases and their respective successors and assigns. If, in accordance with Section 364(e) of the Bankruptcy Code, this Order does not become a final nonappealable order or if any of the provisions of this Order are hereafter modified, amended, vacated, or stayed by any subsequent order of this Court or any other court, such termination or subsequent order will not affect: (a) subject to Paragraph 9 of this Order, any of the agreements, stipulations, representations, or findings contained in this Order, or any of the relief granted by, or any of the releases contained in, this Order; and (b) the validity, extent, amount,

perfection, priority, enforceability, or effectiveness of any lien, security interest, or other benefit

or claim authorized hereby with respect to Postpetition Debt incurred, prior to the effective date of

such termination or subsequent order.  All such liens, security interests, claims, and other benefits

will be governed in all respects by the original provisions of this Order, and Lender will be entitled

to all of the rights, remedies, privileges, and benefits granted herein, including, without limitation,

the liens and priorities granted herein with respect to the Postpetition Debt.  Except as otherwise

explicitly set forth in this Order, no third party is intended to be, or may be deemed to be, a third-

party beneficiary of this Order.

25.    Survival.  The provisions of this Order, and any actions taken pursuant to

or in reliance upon the terms hereof, will survive entry of, and govern in the event of any conflict

with, any order that may be entered in these chapter 11 cases: (a) confirming any chapter 11 plan,

(b) converting either chapter 11 cases to a case under chapter 7 of the Bankruptcy Code, (c)

dismissing either chapter 11 case, (d) after the occurrence of the Termination Date or an Event of

Default, (e) withdrawal of the reference of the chapter 11 cases from this Court, or (e) providing

for abstention from handling or retaining of jurisdiction of the chapter 11 case in this Court.  The

terms and provisions of this Order, including, without limitation, the rights granted to Lender under

Sections 364(c) and (d) of the Bankruptcy Code, will continue in full force and effect until all of

the Aggregate Debt is Paid in Full.

26.    Notice of Final Hearing.    The Final Hearing is scheduled for

**_____, 2021, at _____ a.m./p.m. (prevailing Eastern time)**, and may be

continued from time to time without further notice other than that given in open court.  The Debtors

are directed to serve a copy of this Order, in accordance with the Local Rules, on counsel for

Lender, any Persons known by the Debtors to have asserted a lien or other interest in any of the

Debtors' assets, the Debtors' twenty (20) largest unsecured creditors, all taxing authorities that

have, or whom the Debtors believe may, assert claims against the Debtors or any of the Debtors'

assets, and the United States Trustee, which service will constitute appropriate notice of the Final

Hearing.    Any objection to the Final Order must be filed with the Court by

_____, 2021, at _____ **a.m./p.m. (prevailing Eastern time)** and at the

same time served upon:  (i) Something Sweet Acquisitions, Inc.,  724 Grand Avenue, New Haven

CT 06511; (ii) Something Sweet, Inc., 724 Grand Avenue, New Haven CT 06511; (iii) proposed

counsel for the Debtors, Bielli & Klauder LLP, 1204 N. King Street, Wilmington, DE 19801

(dklauder@bk-legal.com)]; (iv) counsel for the Lender, Morris, Nichols, Arsht & Tunnell LLP,

1201 North Market Street, Wilmington, Delaware 19801, Attn: Robert J. Dehney

(rdehney@morrisnichols.com); (v) Accord Financial Inc., 25 Woods Lake Road, Suite 102,

Grenville, SC 29606 ]; (vi) Capital Equipment Solutions, LLC, 4131 S. State Street, Chicago, IL

60609 ; (vii) counsel to COF Loans Acquisition, LLC  and (viii) the Office of the United States

Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Room

2207, Wilmington, Delaware 19801.

_____

United States Bankruptcy Judge

Dated:  July _____, 2021

## EXHIBIT A

## DEFINED TERMS

1.    ***Aggregate Collateral***.    Collectively, the Prepetition Collateral and the Postpetition Collateral.

2.    ***Allowable 506(b) Amounts***.    To the extent allowable under Section 506(b) of the Bankruptcy Code, interest at the default rate of interest as set forth in Section 1.5(c) of the Note, all fees, costs, expenses, and other charges due or coming due under the specified Postpetition Documents (regardless of whether such interest, fees, costs, expenses, and other charges are included in the Budget), and all costs and expenses at any time incurred by Lender in connection with: (a) the negotiation, preparation, and submission of this Order and any other order or document related hereto, and (b) the representation of Lender in the chapter 11 cases, including, without limitation, in defending any Challenge.

3.    ***Bankruptcy Code***.    The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended, and any successor statute.

4.    ***Budget***.    The "Budget" (as such term is defined in the Note) attached to this Order as **Exhibit B**, as amended, supplemented, or otherwise modified from time to time in accordance with the Note.

5.    ***Carve-Out Professionals***.    Collectively, (a) Bielli & Klauder LLP ("B&K"), as counsel for the Debtors, and (b) such other professionals that are authorized by the Court to be retained that are specifically identified in the Budget.

6.    ***Cash Collateral***.    All "cash collateral", as that term is defined in Section 363(a) of the Bankruptcy Code, in which Lender has an interest, all deposits subject to setoff rights in favor of Lender, and all cash arising from the collection or other conversion to cash of all or any portion of the Aggregate Collateral, including, without limitation, from the sale or other disposition of any inventory and the collection of any accounts receivable of the Debtors.

7.    ***Committee***.    Any official creditors' committee appointed to represent unsecured creditors in these chapter 11 case pursuant to Section 1102 of the Bankruptcy Code.

8.    ***DIP Commitment***.    The Commitment of the Lender to make Term Loans to the Debtors in the principal amount of up to $500,000 as the same may be terminated or reduced from time to time in accordance with the terms of the Note.

9.    ***Fee Objection Period***.    Ten (10) days after delivery of the applicable invoices to the Fee Notice Parties.

10.    ***Final Hearing***.    The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

11.    ***Final Order***.    A final order authorizing the Debtors to use Cash Collateral and incur Postpetition Debt entered at, or in connection with, the Final Hearing.

12.     ***Lender Charges***.  Interest at the applicable rate of interest under the Note.

13.     ***Lender's Fees and Expenses***.  All fees, costs, expenses, and other charges incurred by Lender, or any legal and financial advisors of Lender, at any time in connection with the documentation, negotiation, administration, and enforcement of the Note, this Order, or the Final Order, or as otherwise provided for in the Note.  For the avoidance of doubt, the Lender's Fees and Expenses constitute Postpetition Debt.

14.     ***Obligations***.  The "Obligations," as that term is defined in the Note.

15.     ***Organizational Documents***.  Collectively, the Certificate of Incorporation of Something Sweet Acquisition, Inc. dated September 23, 2010, and the Bylaws of Something Sweet Acquisition, Inc., and the Certificate of Incorporation of Something Sweet Inc. dated May 28, 1995, and filed as of June 19, 1995, and Bylaws of Something Sweet Inc.

16.     ***Paid in Full***.  With respect to the Postpetition Debt and except as otherwise agreed to in writing by Lender: (a) the termination of the Note and the other Postpetition Documents; (b) the indefeasible payment in full in cash of all Postpetition Debt, together with all accrued and unpaid interest and fees thereon; (c) all commitments under the Note, shall have terminated or expired; (d) Lender shall have received cash collateral in such amount as Lender deems is reasonably necessary to secure Lender in respect of any asserted or threatened claims, losses, demands, actions, suits, proceedings, investigations, liabilities, fines, fees, costs, expenses (including attorneys' fees and expenses), penalties, or damages for which Lender may be entitled to indemnification or reimbursement by the Debtors pursuant to the terms of the Note, the other Postpetition Documents.

17.     ***Permitted Priority Liens***.  Shall collectively mean (a) the Carve-Out, and (b) liens in favor or third parties upon the Prepetition Collateral, consistent with the Lien Priority Schedule.

18.     ***Person***.  Any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, public benefit corporation, other entity or government (whether federal, state, county, city, municipal, local, foreign, or otherwise, including any instrumentality, division, agency, body, or department thereof).

19.     ***Postpetition Collateral***.  shall mean the assets and property covered by this Order and the Final Order and any other assets and property, real or personal, tangible or intangible, now existing or hereafter acquired, that may at any time be or become subject to a security interest or Lien in favor of the Lender, to secure the Obligations. Without limiting the foregoing, the Postpetition Collateral shall include all present and future property of the Debtors under Section 541(a) of the Bankruptcy Code and all proceeds thereof.

20.     ***Postpetition Debt***.  All the indebtedness and obligations of the Debtors to Lender incurred on or after the Petition Date pursuant to this Order or otherwise, including, without limitation, all Obligations and any advances made by Lender to pay all or any portion of the Carve-Out.

21. **_Postpetition Documents_**.  Collectively, the Note, the Collateral Documents, this Order and the Final Order, and all other agreements, instruments, documents and certificates executed and delivered to, or in favor of the Lender and including all other pledges, powers of attorney, consents, assignments, contracts, notices, and all other written matter whether heretofore, now or hereafter executed by or on behalf of the Debtors, or any employee of a Debtor, and delivered to the Lender in connection with the Note or the transactions contemplated thereby, in each case in form and substance acceptable to the Lender in its sole discretion.  Any reference in the Note or any other Postpetition Document to a Postpetition Document shall include all appendices, exhibits or schedules thereto, and all amendments, restatements, supplements or other modifications thereto, and shall refer to such Postpetition Document as the same may be in effect at all times such reference becomes operative.

22. **_Postpetition Liens_**.  Lender's Priority Liens in the Aggregate Collateral, subject only to the Permitted Priority Liens as set forth in the Lien Priority Schedule.

23. **_Prepetition Collateral_**.  Collectively, all the "Collateral", existing as of the Petition Date, and any and all proceeds, rents, issues, profits, and products thereof.

24. **_Prepetition Liens_**.  The Factor's, CES's and the Subordinated Lender's security interests in, and liens on, the Prepetition Collateral under the Prepetition Secured Debt Documents, subject only to Permitted Priority Liens of Lender.

25. **_Prepetition Secured Debt_**.  (a) All of the indebtedness and obligations under the Prepetition Secured Debt Documents as of the Petition Date, plus (b) all Allowable 506(b) Amounts.

26. **_Prepetition Secured Parties_**.  Collectively, the Factor, CES and the Subordinated Lender.

27. **_Priority Liens_**.  Liens which are first priority, properly perfected, valid, and enforceable security interests, that are not subject to any claims, counterclaims, defenses, setoff, recoupment, or deduction, and that are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Bankruptcy Code, any agreement, or applicable non-bankruptcy law.

28. **_Termination Date_**.  At Lender's election, the earliest to occur of:  (a) the date on which Lender provides, via facsimile, electronic mail, or overnight mail, written notice to counsel for the Debtors, counsel for any Committee, and the United States Trustee of the occurrence and continuance of an Event of Default; (b) the date that is twenty-one (21) days following the entry of this Order if the Final Order is not entered in form and substance reasonably satisfactory to Lender by such date; (c) the date of the Final Hearing, if this Order is modified at the Final Hearing in a manner reasonably unacceptable to Lender; (d) the closing date of the sale of all or substantially all of the assets of the Debtor; and (e) the date on which the Postpetition Debt is Paid in Full.

## **EXHIBIT B**

**Budget**

**Something Sweet, Inc. 90 Day DIP Budget**
*$ in 000s*

| | Week #<br>Actual/Forecast<br>Week Ending Sunday | 1<br>Forecast<br>7/11/21 | 2<br>Forecast<br>7/18/21 | 3<br>Forecast<br>7/25/21 | 4<br>Forecast<br>8/1/21 | 5<br>Forecast<br>8/8/21 | 6<br>Forecast<br>8/15/21 | 7<br>Forecast<br>8/22/21 | 8<br>Forecast<br>8/29/21 | 9<br>Forecast<br>9/5/21 | 10<br>Forecast<br>9/12/21 | 11<br>Forecast<br>9/19/21 | 12<br>Forecast<br>9/26/21 | 13<br>Forecast<br>10/3/21 | Weeks 1-13<br>Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **Receipts** | | | | | | | | | | | | | | |
| 2 | DIP Funding | - | | | | | | | | | | | | | - |
| 3 | Other Cash Collections | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 4 | **Collections SubTotal** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** |
| 5 | | | | | | | | | | | | | | | |
| 6 | **Disbursements** | | | | | | | | | | | | | | |
| 7 | Payroll, Payroll Taxes, Benefits | - | - | (19.1) | (3.3) | (19.1) | - | (17.1) | (3.3) | (17.1) | - | (17.1) | (3.3) | (17.1) | (116.2) |
| 8 | Rent | - | - | - | - | (46.0) | - | - | (46.0) | - | - | - | - | (46.0) | (138.0) |
| 9 | Utilities | - | - | (48.3) | - | - | - | - | (48.3) | - | - | - | (48.3) | - | (144.8) |
| 10 | Property/Personal Property (One Time) | - | - | - | (54.6) | - | - | - | - | - | - | - | - | - | (54.6) |
| 11 | Legal | - | - | - | (30.0) | - | - | - | (25.0) | - | - | - | (20.0) | - | (75.0) |
| 12 | Investment Advisors - Peakstone | (15.0) | - | - | (15.0) | - | - | - | - | - | - | - | - | - | (30.0) |
| 13 | Equipment Leases | - | (3.3) | (5.0) | - | (6.6) | - | (3.3) | (6.9) | (8.4) | - | (12.2) | (2.9) | (6.6) | (55.2) |
| 14 | Other | - | (0.5) | (19.3) | (8.4) | - | (0.5) | - | (8.4) | - | - | (0.5) | (8.4) | - | (46.0) |
| 15 | Claims and Noticing Agent | - | (10.0) | - | - | - | - | - | - | - | - | - | - | - | (10.0) |
| 16 | Term Loan (Loeb) | (2.9) | (2.9) | (2.9) | (4.0) | (4.0) | (4.0) | (4.0) | (4.0) | (4.0) | (4.0) | (4.0) | (4.0) | (4.0) | (49.1) |
| 17 | Insurance renewals | - | - | - | - | (50.0) | - | - | - | - | - | - | - | - | (50.0) |
| 18 | Fines/Lawsuit Settlement | - | - | - | (0.3) | - | - | - | (0.3) | - | - | - | (0.3) | - | (0.9) |
| 19 | Insurance (financing of Pollution policy) | - | - | - | (2.8) | - | - | - | (2.8) | - | - | - | (2.8) | - | (8.5) |
| 20 | **Total Disbursements** | **(17.9)** | **(16.7)** | **(94.6)** | **(118.4)** | **(125.8)** | **(4.5)** | **(24.4)** | **(98.9)** | **(75.5)** | **(4.0)** | **(33.8)** | **(89.9)** | **(73.7)** | **(778.2)** |
| 21 | | | | | | | | | | | | | | | |
| 22 | **Net Cash Flow** | **(17.9)** | **(16.7)** | **(94.6)** | **(118.4)** | **(125.8)** | **(4.5)** | **(24.4)** | **(98.9)** | **(75.5)** | **(4.0)** | **(33.8)** | **(89.9)** | **(73.7)** | **(778.2)** |
| 23 | | | | | | | | | | | | | | | |
| 31 | | | | | | | | | | | | | | | |
| 32 | **Total Disbursements** | **(17.9)** | **(16.7)** | **(94.6)** | **(118.4)** | **(125.8)** | **(4.5)** | **(24.4)** | **(98.9)** | **(75.5)** | **(4.0)** | **(33.8)** | **(89.9)** | **(73.7)** | **(778.2)** |
| 33 | | | | | | | | | | | | | | | |
| 34 | **Net Cash Flow** | **(17.9)** | **(16.7)** | **(94.6)** | **(118.4)** | **(125.8)** | **(4.5)** | **(24.4)** | **(98.9)** | **(75.5)** | **(4.0)** | **(33.8)** | **(89.9)** | **(73.7)** | **(778.2)** |

| **Cash Flow Summary** | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash (Book) | 100 | 82 | 65 | (29) | (148) | (273) | (278) | (302) | (401) | (477) | (481) | (515) | (604) | 100 |
| Receipts - DIP Funding | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Receipts - Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Disbursements | (18) | (17) | (95) | (118) | (126) | (5) | (24) | (99) | (75) | (4) | (34) | (90) | (74) | (778) |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash (Book)** | **82** | **65** | **(29)** | **(148)** | **(273)** | **(278)** | **(302)** | **(401)** | **(477)** | **(481)** | **(515)** | **(604)** | **(678)** | **(678)** |

## EXHIBIT C

**Note**

**EXECUTION VERSION**

## DEBTOR IN POSSESSION SECURED
## MULTI-DRAW TERM LOAN PROMISSORY NOTE

$500,000.00                                                       Wilmington, Delaware
                                                                        July __, 2021

On July 2, 2021 (the "<u>Petition Date</u>"), Something Sweet Acquisition, Inc**.**, a Delaware corporation and Something Sweet Inc., a Connecticut corporation (each, the "<u>Company</u>" or "<u>Borrower,</u>" and collectively, the "<u>Companies</u>" or the "<u>Borrowers</u>") commenced a chapter 11 case in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>"; and the case commenced thereby, the "<u>Chapter 11 Case</u>"). The Companies (as defined herein) continue to operate their business and manage their properties as debtors and debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The Companies have requested that Copenhagen Acquisition LLC (the "<u>DIP Lender</u>") as lender under this Debtor in Possession Senior Secured Multi-Draw Term Loan Promissory Note (as amended, modified, or supplemented from time to time, this "<u>Note</u>"), make Term Loans (as defined below) from time to time evidenced by this Note. Capitalized terms used herein and not otherwise defined herein shall have the meanings provided in Section 15 of this Note.

1.      <u>Term Loans</u>.

(a)      Subject to the terms and conditions hereof including the DIP Lender's receipt of a Borrowing Request, the DIP Lender agrees to provide the Borrowers with Term Loans in an aggregate principal amount not to exceed $500,000 on the terms, and subject to the conditions, set forth herein and in any Financing Order (the "<u>Maximum Amount</u>").

(b)      <u>Term Loans</u>. At any time on or after the date of entry of the Interim Order**,** and subject to the terms and conditions hereof, including the DIP Lender's receipt of a Borrowing Request, the DIP Lender agrees to provide the Borrowers with one or more loans (each such loan, each, a "<u>Term Loan</u>" and collectively, the "<u>Term Loans</u>"). For the avoidance of doubt, each Borrowing Request shall be made by the Borrowers in accordance with the Budget. The Borrowers may request the Term Loans pursuant to written notice (which may be by email) delivered to the DIP Lender by or before 2:00 p.m. (New York time) two (2) Business Days prior to the proposed borrowing date (or such shorter period as the DIP Lender may agree) (a "<u>Borrowing Request</u>"). The Borrowing Request shall be in a form satisfactory to the DIP Lender. Upon receipt of a Borrowing Request, subject to the satisfaction of the conditions set forth in this Note, the DIP Lender shall make the proceeds of such Term Loans available to the Borrowers on the applicable date of funding of such Term Loan by transferring immediately available funds equal to such proceeds to an account designated in writing by the Borrowers consistent with its existing cash management system. The Commitment of the DIP Lender shall be permanently reduced upon the making of a Term Loan in an amount equal to such Term Loan. Any principal amount of the Term Loan which is repaid or prepaid may not be reborrowed.

(c)      The Borrowers shall utilize the proceeds of Term Loans in accordance with the Budget and the Financing Orders.

       (d)     The Commitment shall terminate upon the earlier of (A) an acceleration of the Term Loans in accordance with the terms of this Note, (B) a DIP Lender declaration of an Event of Default, or (C) the Maturity Date.

       2.    <u>Certain Conditions to Each Term Loan</u>.  The DIP Lender shall not be obligated to fund any Term Loan, if, as of the date thereof:

       (a)     the Borrowers shall not have paid any amount then payable hereunder or under any other DIP Document;

       (b)     the Companies shall not have delivered corporate resolutions, incumbency certificates and similar documents, in form and substance satisfactory to the DIP Lender with respect to this Note and the other DIP Documents and the transactions contemplated hereby and thereby;

       (c)     any representation or warranty by the Companies contained herein or in any other DIP Document shall be deemed untrue, misleading or incorrect in any material respect in the sole discretion of the DIP Lender (except that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof) as of such date, except to the extent that such representation or warranty expressly relates to an earlier date;

       (d)     with respect to the initial Term Loan (i) the Bankruptcy Court shall not have entered the Interim Order; or (ii) the Interim Order shall have been stayed, vacated, reversed, modified or amended without the DIP Lender's consent in its sole discretion;

       (e)     with respect to any Term Loan after an amount equal to $50,000 of Term Loans have been made to Borrowers, (i) the Bankruptcy Court shall not have entered the Final Order; or (ii) the Final Order shall have been stayed, vacated, reversed, modified or amended without the DIP Lender's consent in its sole discretion;

       (f)     on the date of the entry of the Final Order, the DIP Lender shall not have received an updated Budget, satisfactory to the DIP Lender in its sole discretion;

       (g)     except as occasioned by the commencement of the Chapter 11 Case and the actions, proceedings, investigations and other matters related thereto or arising therefrom (including any actions taken in accordance with the Budget, this Note or the Financing Orders), any event or circumstance having a Material Adverse Effect shall have occurred since the date hereof;

       (h)     any Default or Event of Default shall have occurred and be continuing or would result after giving effect to any Term Loan;

       (i)     after giving effect to any Term Loan, the outstanding principal amount of all Term Loans would exceed the lesser of (i) the Maximum Amount, or (ii) the amount permitted to be borrowed on a cumulative basis from the date hereof through the date of such requested Term Loan as set forth in the Budget and the Financing Orders;

(j)     the DIP Lender shall not have received and approved the Budget in accordance with this Note and the Financing Orders;

(k)     the Companies shall have filed one or more pleadings with the Bankruptcy Court and such pleadings shall not be in form and substance acceptable to the DIP Lender in its sole discretion;

(l)     the Companies shall not have delivered a Borrowing Request as required by this Note;

(m)    The DIP Lender shall not have valid and perfected superpriority Liens in the Collateral; or

(n)     the Bankruptcy Court shall have entered orders (including all "first day orders") and such orders shall not be in form and substance acceptable to the DIP Lender in its sole discretion.

The request and acceptance by the Borrowers of the proceeds of any Term Loan shall be deemed to constitute, as of the date of such request, acceptance or incurrence, (i) a representation and warranty by the Borrowers that the conditions in this Section 2 have been satisfied and (ii) a reaffirmation by the Borrowers of the granting and continuance of the Liens granted in favor of the DIP Lender, pursuant to the Financing Orders.

3.      <u>Payment of Principal</u>.  FOR VALUE RECEIVED, the Borrowers jointly and severally promise to pay to the DIP Lender, the unpaid principal amount of all Term Loans made by the DIP Lender to the Borrowers, on the Maturity Date, together with all accrued and unpaid interest, fees, expenses, premiums and other Obligations to the extent provided, without duplication, in this Note and the Financing Orders.

4.      <u>Payment of Interest</u>.

(a)     Each Term Loan shall bear interest on the outstanding principal amount thereof from the date when made at a rate per annum equal to thirteen percent (13%).  Accrued interest on each Term Loan shall be payable in cash at maturity (whether by acceleration or otherwise).

(b)     All computations of fees, interest and other amounts payable under this Note shall be made on the basis of a 360-day year and actual days elapsed.  Interest, fees and other amounts, as applicable, shall accrue during each period during which interest or such fees are computed from the first day thereof to the last day thereof.

(c)     At the election of the DIP Lender while any Event of Default exists, the Borrowers shall accrue interest (after as well as before entry of judgment thereon to the extent permitted by law) on the Loans and other Obligations under the Loan Documents from and after the date of occurrence of such Event of Default, at a rate per annum equal to fifteen percent (15%) (the "<u>Default Rate</u>").

5.      <u>Payments</u>.

(a)      The  Term Loans, including the aggregate outstanding principal amount of the Term Loans, plus accrued and unpaid interest thereon and all other Obligations, shall be repaid on the Maturity Date (whether by acceleration or otherwise).

(b)      All payments (including prepayments) to be made by the Borrowers on account of principal, interest, fees and other amounts required hereunder shall be made (i) without set off, recoupment, counterclaim or deduction of any kind and shall be free and clear of and without deduction for any and all present or future taxes, levies, imposts, deductions, charges or withholdings  (other than taxes that are imposed on the DIP Lender's overall net income), (ii) except as otherwise expressly provided herein, to the DIP Lender pursuant to the wiring instructions delivered to the Borrowers prior to the date hereof or as the Lender may from time to time specify in accordance with this Note), and (iii) in Dollars and in immediately available funds, no later than 2:00 p.m. (New York time) on the date due.

(c)      If any payment hereunder shall be stated to be due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day, and such extension of time shall in such case be included in the computation of interest or fees, as the case may be.

6.      <u>Optional Prepayments</u>.  Subject to the terms and conditions of the Financing Orders, the Borrowers shall have the right at any time and from time to time to prepay any Term Loans under this Note in whole or in part upon two (2) Business Days' written notice to the DIP Lender received by or before 2:00 p.m. (New York time) on such date.  Notice of prepayment having been given as aforesaid, the principal amount specified in such notice shall become due and payable on the prepayment date specified therein in the aggregate principal amount specified therein unless such repayment is conditioned on the receipt of any third party funds which are not received.  Any prepayment or repayment hereunder shall be accompanied by interest on the principal amount of this Note being prepaid or repaid to the date of prepayment or repayment.

7.      <u>Indemnity</u>.

(a)      The Companies shall indemnify and hold harmless the DIP Lender and each of its affiliates, and each such Person's respective officers, directors, employees, attorneys, agents and representatives (each, an "<u>Indemnified Person</u>"), from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities and expenses (including reasonable attorneys' fees and disbursements and other costs of investigation or defense, including those incurred upon any appeal) that may be instituted or asserted against or incurred by any such Indemnified Person as the result of credit having been extended, suspended or terminated under this Note and the other DIP Documents and the administration of such credit, and in connection with, related to or arising out of the transactions contemplated hereunder and thereunder and any actions or failures to act in connection therewith, and legal costs and expenses arising out of or incurred in connection with disputes between the DIP Lender on the one hand and the Companies on the other hand; <u>provided</u>, that (i) the Companies shall not be liable for any indemnification to an Indemnified Person to the extent that any such suit, action, proceeding, claim, damage, loss, liability or expense results solely from such Indemnified Person's gross negligence or willful misconduct as finally determined by

4

a court of competent jurisdiction and (ii) this Section 7 shall not apply with respect to taxes other than any taxes that represent losses, claims, damages, etc. arising from any non-tax claim.  **NO INDEMNIFIED PERSON SHALL BE RESPONSIBLE OR LIABLE TO ANY OTHER PARTY, ANY SUCCESSOR, ASSIGNEE OR THIRD PARTY BENEFICIARY OF SUCH PERSON OR ANY OTHER PERSON ASSERTING CLAIMS DERIVATIVELY THROUGH SUCH PARTY, FOR INDIRECT, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES THAT MAY BE ALLEGED AS A RESULT OF CREDIT HAVING BEEN EXTENDED, SUSPENDED OR TERMINATED UNDER ANY DIP DOCUMENT OR AS A RESULT OF ANY OTHER TRANSACTION CONTEMPLATED HEREUNDER OR THEREUNDER.**

8.    <u>Priority of Obligations and DIP Lender's Liens</u>.

(a)    To secure all of the Borrowers' Obligations now existing or hereafter arising, the DIP Lender, is granted, effective as of the Petition Date:  (i) subject to the Carve-Out, an allowed  super-priority administrative expense claim against each of the Borrowers pursuant to Section 364(c)(1) of the Bankruptcy Code, and except as set forth in the Financing Orders, having a priority over any and all other claims and costs and expenses of administration of any kind whatsoever, whether now existing or hereafter arising, including, without limitation, those specified in, ordered pursuant to or arising under, *inter alia*, sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise (whether incurred in this Chapter 11 Case and any Successor Case), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim (x) shall at all times be senior to the rights of the Companies, any successor trustee or estate representative, or any other creditor or party in interest in the Chapter 11 Case or any Successor Case, (y) shall be, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, considered an administrative expense allowed under section 503(b) of the Bankruptcy Code, and (z) shall be payable from and have recourse to all prepetition and postpetition property, whether existing as of the Petition Date or thereafter acquired (including all Collateral); and (ii) pursuant to Sections 364(c)(2) of the Bankruptcy Code, Liens on, and security interests in, the Collateral, that are first and senior in priority to all other Liens on, and security interests in, the Collateral that was not encumbered by a valid, enforceable, properly perfected and non-avoidable Lien as of the Petition Date, subject only to the Carve-Out, and (y) pursuant to sections 364(c)(3) of the Bankruptcy Code, Liens on, and security interests in, all other Collateral, subject only to the Carve-Out.  Except as set forth in the Financing Orders, the security interests and Liens granted to the DIP Lender hereunder shall not be (i) subject to any Lien or security interest which is avoided and preserved for the benefit of a Company's estate under Section 551 of the Bankruptcy Code, or (ii) subordinated to or made *pari passu* with any other Lien or security interest under Section 364(d) of the Bankruptcy Code or otherwise.

(b)    The priority of the DIP Lender's Liens on the Collateral shall be consistent with this Section 8 and as more fully set forth in the Financing Orders.

(c)    Notwithstanding anything herein to the contrary (i) all proceeds received by the DIP Lender from the Collateral subject to the Liens granted in this Section 8 and in each other DIP Document, including the Financing Orders shall be subject to the Carve-Out, and (ii) no

Person entitled to the Carve-Out shall be entitled to sell, or otherwise dispose, or seek or object to the sale or other disposition of, any Collateral.

(d)     Each Company agrees that the Obligations shall constitute allowed administrative expenses in the Chapter 11 Case, having priority over all administrative expenses of and unsecured claims against such Person now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 330, 331, 363, 364, 365, 503, 506, 507, 546, 726, 1113 and/or 1114 of the Bankruptcy Code, except as set forth in the Financing Orders.

(e)     The DIP Lender's Liens on the Collateral and the super-priority administrative claim under Section 364(c) of the Bankruptcy Code afforded the Obligations shall, following the occurrence and during the continuation of an Event of Default, be subject to the Carve-Out, in accordance with the Financing Orders.

9.     <u>Further Assurances</u>.  Each Company agrees that it shall, at its expense and upon the reasonable request of the DIP Lender, duly execute and deliver or cause to be duly executed and delivered, to the DIP Lender, as the DIP Lender shall direct the Companies such further instruments and do and cause to be done such further acts as may be necessary or proper in the reasonable opinion of the DIP Lender to carry out more effectively the provisions and purposes of this Note or any other DIP Document, including, upon the written request of the DIP Lender and in form and substance reasonably satisfactory to the DIP Lender, security agreements, UCC-l financing statements and other Collateral Documents confirming and perfecting the granting to the DIP Lender, of the Liens (subject to the Financing Orders) in the Collateral to secure the Obligations.

10.     <u>Reports and Notices</u>.  The Companies shall deliver (which delivery may be made by electronic communication (including email)) to the DIP Lender each of the reports and other items (without duplication) set forth on Schedule 10 and in the Financing Orders no later than the times specified therein.

11.     <u>Affirmative Covenants</u>.

Each Company agrees that:

(a)     Upon request of the DIP Lender, the Companies will permit any officer, employee, attorney or accountant or agent of the DIP Lender to audit, review, make extracts from or copy, at such Company's expense, any and all corporate and financial and other books and records of such Company at all times during ordinary business hours and, in the absence of an Event of Default, upon reasonable advance notice and to discuss such Company's affairs with any of their directors, officers, employees, attorneys, or accountants.  The Companies will permit the DIP Lender, or any of its officers, employees, accountants, attorneys or agents, to examine and inspect any Collateral or any other property of the Companies at any time during ordinary business hours and, in the absence of an Event of Default, upon reasonable prior notice.

(b)     (A) The Companies will comply with all requirements of applicable law, and (B) the Companies will obtain, maintain in effect and comply with all contracts and all permits, licenses and similar approvals necessary for the operation of its business as now or hereafter

conducted other than to the extent contemplated by the Budget, the Sale Motion or the Financing Orders.

(c)     The Companies will pay or discharge, when due, (i) all taxes, assessments and governmental charges levied or imposed upon it or upon its income or profits, upon any properties of the Companies (including, without limitation, the Collateral) or upon or against the creation, perfection or continuance of the security interest, prior to the date on which penalties attach thereto, except in each case (1) where the same are being contested in good faith by appropriate proceedings diligently conducted and adequate reserves in accordance with GAAP are being maintained by the Companies and (2) to the extent nonpayment is permitted or required by the Bankruptcy Code or this Note, (ii) all federal, state and local taxes required to be withheld by them, and (iii) all lawful claims for labor, materials and supplies which, if unpaid, might by law become a lien or charge upon any property of the Companies.

(d)     (i) The Companies will keep and maintain the Collateral and all of its properties necessary or useful in its business in good condition, repair and working order (normal wear and tear excepted) other than to the extent contemplated by the Budget or the Financing Orders, (ii) the Companies will defend the Collateral against all claims or demands of all Persons (other than Permitted Encumbrances) claiming the Collateral or any interest therein, and (iii) the Companies and each of its Subsidiaries will keep all Collateral free and clear of all security interests, liens and encumbrances, except Permitted Encumbrances and other than to the extent contemplated by the Financing Orders.

(e)     The Borrowers shall use the proceeds of the DIP Loans solely in accordance with the Budget and the Financing Orders.

(f)     The Companies will preserve and maintain its existence and all of its rights, privileges and franchises necessary or desirable in the conduct of its business, except to the extent contemplated by the Budget, the Sale Motion or the Financing Orders.

(g)     The Companies shall at all times operate its business in a manner consistent with the Budget except to the extent of any Permitted Variance.

(h)     The Companies shall (i) comply with the Budget (which Budget shall be updated periodically and consistent with the terms of this Note, shall be acceptable to the DIP Lender in its sole discretion, and subject only to a permitted deviation acceptable to the DIP Lenders in its sole discretion) and the Financing Orders; (ii) hold all cash in a bank account mutually agreed upon by the Borrowers and the DIP Lender; and (iii) comply with any other financial covenants contained in any of the DIP Documents.

(i)     The Companies agree that each Company shall take all actions necessary to cause each of the following to occur (each a "Milestone" and collectively, the "Milestones"):

(i)     no later than **eight (8)** Business Days after the Petition Date, the Interim Order approving this Note shall be entered by the Bankruptcy Court;

(ii)     no later than **twenty-one (21)** days after the entry of the Interim Order, the Final Order approving this Note and the financing contemplated hereby shall be entered by the Bankruptcy Court;

(iii)     On or before the date that is **fourteen (14)** days after the Petition Date, (i) the confidential information memorandum (subject to supplementation) with respect to a 363 Sale by the Borrowers shall have been finalized and delivered to potential bidders and (ii) an electronic dataroom (subject to supplementation) for such 363 Sale shall have been opened.

(iv)     On or before the date that is **fourteen (14)** days after the Petition Date, Borrowers shall file a motion (the "Sale Motion") for approval of an order establishing bidding procedures (the "Bidding Procedures Order"), which Bidding Procedures Order shall be in form and substance acceptable to the DIP Lender in its sole discretion.

(v)     **Twenty-one (21)** days after the Sale Motion is filed, the Bidding Procedures Order shall be entered by the Bankruptcy Court (subject to the Court's availability).

(vi)     On or before the date that is **seventy (70)** days after the Petition Date, Borrowers will conduct one or more auctions for all, or substantially all, of the assets of the Borrowers pursuant to, and in accordance with, the Bidding Procedures Order.

(vii)     On or before the date that is **seventy-five (75)** days after the Petition Date, Borrowers will obtain entry of an order of the Court, in form and substance reasonably satisfactory to Lender ("Sale Order"), authorizing and approving one or more sales of all, or substantially all, of the assets of the Borrowers pursuant to one or more definitive purchase agreements in form and substance acceptable to the DIP Lender in its sole discretion, including, without limitation, with respect to the purchase price, any conditions to closing, the closing date, and other terms and conditions (each, a "Purchase Agreement").

(viii)     On or before the date that is **eighty-five (85)** days after the Petition Date, Borrowers shall have consummated one or more sales of all, or substantially all, of the assets of Borrowers, pursuant to, and in accordance with, the terms of the Sale Order and the Purchase Agreement(s), and, except as provided in the Financing Orders, remitted all of the proceeds thereof to the DIP Lender for application in accordance with the terms of the DIP Documents.

12.     Negative Covenants.

Each Company agrees that, without the prior written consent of the DIP Lender:

(a)     The Companies shall not, directly or indirectly, by operation of law or otherwise, (i) form or acquire any Subsidiary, or (ii) merge with, consolidate with, acquire all or substantially all of the assets or Equity Interests of, or otherwise combine with or acquire, any Person.

(b)     The Companies shall not create, incur, assume or permit to exist any Indebtedness, except to the extent not prohibited by the Financing Orders, Permitted Indebtedness.

(c)    The Companies shall not enter into, renew, extend or be a party to any transaction with any affiliate, except transactions otherwise expressly permitted by this Note.

(d)    The Companies shall not create, incur, assume or permit to exist any Lien on or with respect to any of its properties or assets (whether now owned or hereafter acquired) except for Permitted Encumbrances or as expressly permitted by the Financing Orders.

(e)    The Companies will not assume, guarantee, endorse or otherwise become directly or contingently liable in connection with any obligations of any other Person, except the endorsement of negotiable instruments by a Company for the deposit or collection or similar transactions in the ordinary course of business.

(f)    The Companies will not convey, sell, lease, assign, transfer or otherwise dispose of any of its property, business or assets, whether now owned or hereinafter acquired other than the transfer, sale or disposition of assets approved by an order of the Bankruptcy Court, which order shall be in form and substance acceptable to the DIP Lender in its sole discretion.

(g)    The Companies shall not make any investment in, or make loans or advances of money to, any Person, through the direct or indirect lending of money, holding of securities or otherwise.

13.    <u>Events of Default; Rights and Remedies</u>.    Notwithstanding the provisions of Section 362 of the Bankruptcy Code and without application or motion to the Bankruptcy Court, the occurrence of any one or more of the following events (regardless of the reason therefor) shall constitute an "<u>Event of Default</u>" hereunder:

(a)    A Company (i) shall fail to make any payment of principal of, or interest on, or fees owing in respect of, the Term Loans or any of the other Obligations when due and payable, or (ii) shall fail to pay or reimburse the DIP Lender for any expense reimbursable hereunder or under any other DIP Document within three (3) Business Days following the demands for such reimbursement or payment.

(b)    A Company shall fail to comply with any of the provisions of (i) Section 11 of this Note and such failure shall remain uncured for a period of five (5) Business Days, or (ii) Section 12 of this Note.

(c)    A Company shall fail to comply with any of other provision of this Note or any of the other DIP Documents (other than any provision embodied in or covered by any other clause of this Section 13) and the same if capable of being remedied, shall remain unremedied for ten (10) days after the earlier of the date a senior officer or a Company becomes aware of such failure and the date written notice of such default shall have been given by the DIP Lender to such Company.

(d)    Except for defaults occasioned by the filing of the Chapter 11 Case and defaults resulting from obligations with respect to which the Bankruptcy Code prohibits a Company from complying or permits a Company not to comply, a default or breach shall occur after the Petition Date under any other agreement, document or instrument to which a Company is a party that is not cured within any applicable grace period therefor, and such default or breach (i)

9

involves the failure to make any payment when due in respect of any Indebtedness (other than the Obligations) the Companies in excess of $100,000.00 in the aggregate, or (ii) causes, or permits any holder of such Indebtedness or a trustee to cause, Indebtedness or a portion thereof in excess of $100,000.00 in the aggregate to become due prior to its stated maturity or prior to its regularly scheduled dates of payment, regardless of whether such default is waived, or such right is exercised, by such holder or trustee.

(e)     Any representation or warranty herein or in any other DIP Document or in any written statement, report, financial statement or certificate made or delivered to the DIP Lender by the Companies is untrue or incorrect in any material respect (except that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof) as of the date when made or deemed made.

(f)     A Company shall bring a motion in the Chapter 11 Case to obtain financing from any Person other than the DIP Lender under Section 364(c) or 364(d) of the Bankruptcy Code, except Permitted Indebtedness.

(g)     The entry of an order in the Chapter 11 Case confirming a plan or plans of reorganization that does not contain a provision for the termination of the DIP Lender's commitment to make Term Loans and the indefeasible repayment in full in cash of all the Obligations under this Note on or before the effective date of such plan or plans and that is not otherwise acceptable to the DIP Lender in its sole discretion.

(h)     The filing of any motion by a Borrower seeking, or the entry of any order in the Chapter 11 Case in respect of, any claim or claims under Section 506(c) of the Bankruptcy Code against or with respect to any Collateral.

(i)     The sale, without the DIP Lender's consent in its sole discretion, of all or substantially all of a Borrower's assets either through a sale under Section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the Chapter 11 Case, or otherwise, that does not provide for the indefeasible payment in full in cash of the Obligations and termination of the DIP Lender's commitment to make Term Loans, and is not otherwise acceptable to the DIP Lender in its sole discretion.

(j)     The occurrence of any postpetition judgments, liabilities, claims or events that, individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect on the DIP Lender's likelihood of repayment, in the DIP Lender's sole discretion .

(k)     The entry by the Bankruptcy Court of an order authorizing the appointment of an interim or permanent trustee in the Chapter 11 Case or the appointment of an examiner in the Chapter 11 Case with expanded powers to operate or manage the financial affairs, business, or reorganization of the Companies.

(l)     The Chapter 11 Case shall be dismissed or converted from a case under chapter 11 of the Bankruptcy Code to a case under chapter 7 of the Bankruptcy Code.

(m)    The entry of an order in the Chapter 11 Case avoiding or requiring repayment of any portion of the payments made on account of the Obligations owing under this Note or the other DIP Documents.

(n)    The entry of an order in the Chapter 11 Case granting any other super-priority administrative claim or Lien equal to or superior to that granted to the DIP Lender (other than any such claim or Lien permitted by the Financing Orders), unless (i) consented to in writing by the DIP Lender in its sole discretion or (ii) the Obligations are indefeasibly paid in full in cash and the DIP Lender's commitment to make Term Loans are terminated.

(o)    The entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow any creditor (other than the DIP Lender) to execute upon or enforce a Lien on any Collateral.

(p)    The Financing Orders (or either of them) shall be stayed, amended, modified, reversed or revoked in any respect without the DIP Lender's prior written consent (which consent shall be in its sole discretion).

(q)    There shall commence any suit or action against the DIP Lender by or on behalf of (i) a Company or (ii) any official committee in the Chapter 11 Case, in each case, that asserts a claim or seeks a legal or equitable remedy that would have the effect of subordinating the claim or Lien of the DIP Lender or recovering any amounts paid or payable to the DIP Lender, and, if such suit or action is commenced by any Person other than a Company, officer, or employee of a Company, such suit or action shall not have been dismissed or stayed within 10 days after service thereof on the DIP Lender, as applicable, and, if stayed, such stay shall have been lifted.

(r)    Failure of the Companies to comply with any Milestone set forth in Section 11(i).

(s)    Any provision of any DIP Document shall for any reason cease to be valid, binding and enforceable in accordance with its terms (or a Company shall challenge the enforceability of any DIP Document or shall assert in writing, or engage in any action or inaction based on any such assertion, that any provision of any DIP Document has ceased to be or otherwise is not valid, binding and enforceable in accordance with its terms), or any Lien created under any DIP Document shall cease to be a valid and perfected first priority Lien (except as otherwise permitted herein or in the Financing Orders) in any of the Collateral purported to be covered thereby.

(t)    A breach by a Company of any of the terms of any of the Financing Orders.

(u)    The Final Order shall not have been entered by the Bankruptcy Court within **twenty-one (21)** days from the date of the entry of the Interim Order.

If any Event of Default shall have occurred and be continuing, then the DIP Lender may, upon written notice to the Borrowers and subject to the terms of the Financing Orders: (i) terminate the Commitment of the DIP Lender with respect to further Term Loans; (ii) declare all or any portion of the Obligations, including all or any portion of any Term Loan, to be forthwith due and payable; and (iii) exercise any rights and remedies under the DIP Documents or at law or

in equity, all in accordance with the Financing Orders.  Upon the occurrence of an Event of Default and the exercise by the DIP Lender of its rights and remedies under this Note and the other DIP Documents pursuant to clause (iv) above and subject to the Financing Orders, a Company shall assist the DIP Lender in effecting a sale or other disposition of the Collateral upon such terms as are designed to maximize the proceeds obtainable from such sale or other disposition.

Except as otherwise provided for in this Note, the Financing Orders or by applicable law, a Company waives:  (a) presentment, demand and protest and notice of presentment, dishonor, notice of intent to accelerate, notice of acceleration, protest, default, nonpayment, maturity, release, compromise, settlement, extension or renewal of any or all commercial paper, accounts, contract rights, documents, instruments, chattel paper and guaranties at any time held by the DIP Lender on which any Company may in any way be liable, and hereby ratifies and confirms whatever the DIP Lender may do in this regard; (b) all rights to notice and a hearing prior to the DIP Lender taking possession or control of, or the DIP Lender's replevy, attachment or levy upon, the Collateral or any bond or security that might be required by any court prior to allowing the DIP Lender to exercise any of its remedies; and (c) the benefit of all valuation, appraisal, marshaling and exemption laws.

14.    <u>Reference Agreements; Joint & Several</u>.  This Note evidences the Term Loans that may be made to Borrowers from time to time in the aggregate principal amount of up to $500,000.00 and is issued pursuant to and entitled to the benefits of the Financing Orders, to which reference is hereby made for a more complete statement of the terms and conditions under which the Term Loans evidenced by this Note are made and are to be repaid.  "Borrowers" and "Companies" are defined collectively to include all Persons named as one of the Borrowers or Companies herein.  Each Person so named shall be jointly and severally liable for all of the Obligations of Borrowers under this Note.  Each Borrower, individually, expressly understands, agrees and acknowledges, that the credit facilities would not be made available on the terms herein in the absence of the collective credit of all of the Persons named as the Borrowers herein, the joint and several liability of all such Persons, and the cross-collateralization of the collateral of all such Persons.

15.    <u>Definitions</u>.  The following terms used in this Note shall have the following meanings (and any of such terms may, unless the context otherwise requires, be used in the singular or the plural depending on the reference):

"<u>363 Sale</u>" means a sale of the Borrowers' assets as approved by the Bankruptcy Court pursuant to an order satisfactory to the DIP Lender in its sole discretion.

"<u>Bankruptcy Code</u>" shall have the meaning given such term in the recital to this Note.

"<u>Bankruptcy Court</u>" shall have the meaning given such term in the recital to this Note.

"<u>Bidding Procedures Order</u>" shall have the meaning given such term in Section 11(i)(vi) of this Note.

"<u>Borrower</u>" shall have the meaning given such term in the recital to this Note.

"Borrowing Request" shall have the meaning given such term in Section 1(b) of this Note.

"Budget" means a rolling thirteen (13) week forecast of projected receipts, disbursements, net cash flow, liquidity, loans and availability for the immediately following consecutive 13 weeks after the date of delivery, which shall be in substantially the form of the Initial Budget or otherwise in form and substance acceptable to the DIP Lender in its sole discretion and shall be approved by the DIP Lender in its sole discretion. The Initial Budget, which shall be in form and substance acceptable to, and approved by, the DIP Lender in its sole discretion (the "Initial Budget") is attached hereto as Exhibit A.

"Business Day" means any day other than a Saturday, Sunday or legal holiday under the laws of the State of Delaware or any other day on which banking institutions located in the State of Delaware are authorized or required by law or other governmental action to close.

"Carve-Out" shall have the meaning given such term in the Financing Orders.

"Cash Collateral" shall have the meaning given such term in Section 363(a) of the Bankruptcy Code.

"Chapter 11 Case" shall have the meaning given such term in the recital to this Note.

"Closing Date" means the Business Day on which each of the conditions applicable to the initial Term Loan and listed in Section 2 of this Note shall have been satisfied or waived in a manner satisfactory to the DIP Lender.

"Collateral" shall mean the assets and property covered by the Financing Orders and the other Collateral Documents and any other assets and property, real or personal, tangible or intangible, now existing or hereafter acquired, that may at any time be or become subject to a security interest or Lien in favor of the DIP Lender, to secure the Obligations , and shall include DIP Collateral (as defined in the Financing Orders). Without limiting the foregoing, the Collateral shall include all present and future property of the Companies under Section 541(a) of the Bankruptcy Code and all proceeds thereof.

"Collateral Documents" shall mean any agreement entered into pursuant to Section 9 hereof and all similar agreements entered into granting a Lien upon property as security for payment of, the Obligations, each in form and substance acceptable to the DIP Lender in its sole discretion, including the Financing Orders.

"Commitment" means the commitment of the DIP Lender to make the Term Loans to the Borrowers in the principal amount of up to $500,000 as the same may be terminated or reduced from time to time in accordance with the terms of this Note.

"Company" or "Companies" shall have the meaning given to such term in the recital to this Note.

"Debtor" shall have the meaning given to such term in the Financing Orders.

"Default" means an event which, with the giving of notice or the lapse of time or both, would constitute an Event of Default.

"Default Rate" shall have the meaning given such term in Section 4**Error! Reference source not found.** of this Note.

"DIP Documents" shall mean this Note, the Collateral Documents, the Financing Orders, and all other agreements, instruments, documents and certificates executed and delivered to, or in favor of the DIP Lender and including all other pledges, powers of attorney, consents, assignments, contracts, notices, and all other written matter whether heretofore, now or hereafter executed by or on behalf of the Companies, or any employee of a Company, and delivered to the DIP Lender in connection with this Note or the transactions contemplated thereby, in each case in form and substance acceptable to the DIP Lender in its sole discretion.  Any reference in this Note or any other DIP Document to a DIP Document shall include all appendices, exhibits or schedules thereto, and all amendments, restatements, supplements or other modifications thereto, and shall refer to such DIP Document as the same may be in effect at any and all times such reference becomes operative.

"DIP Lender" shall have the meaning given such term in the recital to this Note.

"Dollars" or "$" shall mean lawful currency of the United States of America.

"Event of Default" shall have the meaning given such term in Section 13 of this Note.

"Final Order" shall mean the order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing pursuant to Sections 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001, satisfactory in form and substance to the DIP Lender in its sole discretion, together with all extensions, modifications and amendments thereto (which extensions, modifications and/or amendments are satisfactory in form and substance to the DIP Lender in its sole discretion), authorizing Borrowers to obtain credit, incur Indebtedness, and grant Liens under this Note and/or certain financing documentation, all as set forth in such order.

"Financing Orders" shall mean, collectively, the Interim Order and the Final Order.

"Indebtedness" shall mean, with respect to any Person, without duplication, (a) all indebtedness of such Person for borrowed money; (b) all obligations of such Person for the deferred purchase price of property or services (other than trade payables or other accounts payable incurred in the ordinary course of such Person's business and not outstanding for more than 120 days after the date such payable was created); (c) all obligations of such Person evidenced by bonds, debentures, notes or other similar instruments or upon which interest payments are customarily made; (d) all reimbursement, payment or other obligations and liabilities of such Person created or arising under any conditional sales or other title retention agreement with respect to property used and/or acquired by such Person, even though the rights and remedies of the lessor, seller and/or lender thereunder may be limited to repossession or sale of such property; (e) all capitalized lease obligations of such Person; (f) all obligations and liabilities, contingent or otherwise, of such Person, in respect of letters of credit, acceptances and similar facilities; (g) all monetary obligations under any receivables factoring, receivable sales or similar transactions and

14

all monetary obligations under any synthetic lease, tax ownership/operating lease, off-balance sheet financing or similar financing; and (h) all contingent obligations; and (i) all obligations referred to in clauses (a) through (h) of this definition of another Person secured by (or for which the holder of such Indebtedness has an existing right, contingent or otherwise, to be secured by) a Lien upon property owned by such Person, even though such Person has not assumed or become liable for the payment of such Indebtedness (provided that, if the Person has not assumed or otherwise become liable in respect of such indebtedness, such indebtedness shall be deemed to be in an amount equal to the lesser of (A) the fair market value of the property to which such Lien relates or (B) the aggregate unpaid amount thereof).

"Indemnified Person" shall have the meaning given such term in Section 7 of this Note.

"Initial Budget" is defined in the definition of "Budget" in this Section 15.

"Interim Order" shall mean the interim order of the Bankruptcy Court entered in the Chapter 11 Case after an interim hearing (assuming satisfaction of the standards prescribed in Section 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001 and other applicable law), together with all extensions, modifications and amendments thereto, satisfactory in form and substance to the DIP Lender in its sole discretion, authorizing, on an interim basis, Borrowers to execute and perform under the terms of this Note and the other DIP Documents.

"Lien" shall mean any mortgage or deed of trust, pledge, hypothecation, assignment, deposit arrangement, lien, charge, claim, security interest, easement or encumbrance, or preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including any lease or any financing lease having substantially the same economic effect as any of the foregoing, and the filing of, or agreement to give, any financing statement perfecting a security interest under the Uniform Commercial Code or comparable law of any jurisdiction).

"Material Adverse Effect" means a material adverse change in any of (a) the condition (financial or otherwise) or business, performance, operations or properties of the Borrowers taken as a whole; (b) the ability of the Borrowers to perform its obligations under any DIP Document; or (c) the validity or enforceability of any DIP Document or the rights and remedies of the DIP Lender under any DIP Document.

"Maturity Date" means the earliest to occur of (i) the Stated Maturity Date, (ii) the date the Bankruptcy Court orders the conversion of any of the Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code, (iii) the acceleration of the Term Loans and termination of the DIP Lender's commitment to make the Term Loans, (iv) the substantial consummation of a plan of reorganization filed in the Chapter 11 Case that is confirmed pursuant to an order of the Bankruptcy Court, (v) the date that is **twenty-one (21)** days after the Interim Order has been entered if the Final Order has not been entered by such date, and (vi) any other event set forth in the Financing Orders and/or the other DIP Documents as triggering a Maturity Date.

"Maximum Amount" shall have the meaning given such term in Section 1 of this Note.

"<u>Milestones</u>" shall have the meaning given such term in Section 11 of this Note.

"<u>Note</u>" shall have the meaning given such term in the recital to this Note.

"<u>Obligations</u>" shall mean all loans, advances, debts, liabilities and obligations for the performance of covenants, tasks or duties or for payment of monetary amounts (whether or not such performance is then required or contingent, or such amounts are liquidated or determinable) owing by Borrowers to the DIP Lender, and all covenants and duties regarding such amounts, of any kind or nature, present or future, whether or not evidenced by any note, agreement or other instrument, in all cases, arising under this Note or any of the other DIP Documents.  This term includes all principal, interest, fees, charges, expenses, attorneys' fees and any other sum chargeable to Borrowers under this Note or any of the other DIP Documents.

"<u>Permitted Encumbrances</u>" shall mean the following encumbrances:  (a) the DIP Lender's Liens; and (b) other Liens granted pursuant to the Financing Order (including, to the extent constituting a Lien, the Carve-Out), subject to the priorities set forth in the Financing Orders.

"<u>Permitted Indebtedness</u>" shall mean:  (a) current Indebtedness incurred in the ordinary course of business in connection with operating the Borrowers' business, in each case, in accordance with the Budget; (b) Indebtedness arising under this Note and the other DIP Documents; (c) deferred taxes and other expenses incurred in the ordinary course of business, in accordance with the Budget; (d) any Indebtedness expressly permitted by the terms of the Financing Order and the Budget; and (e) administrative expenses of Borrower for which the Bankruptcy Court has not directed payment, subject to the terms of the Financing Order and the Budget.

"<u>Permitted Variance</u>" means a variance of up to 15% between the actual disbursements for the applicable four (4) week period and the "Total Disbursements" line item as set forth in the Budget for the applicable 4 week period.

"<u>Person</u>" shall mean any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, public benefit corporation, other entity or government (whether federal, state, county, city, municipal, local, foreign, or otherwise, including any instrumentality, division, agency, body or department thereof).

"<u>Petition Date</u>" shall have the meaning given to such term in the recital to this Note.

"<u>Purchase Agreement</u>" shall have the meaning given such term in Section 11(i)(vii) of this Note.

"<u>Sale Motion</u>" shall have the meaning given such term in Section 11 of this Note.

"<u>Sale Order</u>" shall have the meaning given such term in Section 11(i)(vii) of this Note.

"<u>Stated Maturity Date</u>" means the date that is the **[eighteen]** month anniversary of the Petition Date.

"<u>Successor Case</u>" shall have the meaning given such term in the Financing Orders.

"<u>Term Loans</u>" shall have the meaning given such term in Section 1 of this Note.

16.    <u>Representations and Warranties</u>.    The Companies and each of its Subsidiaries represent as follows:

(a)    each Company is duly formed and/or organized, validly existing and in good standing under the laws of their jurisdictions of incorporation or formation;

(b)    upon entry of the Financing Orders, the execution and delivery of this Note and the other DIP Documents and the performance by the Companies of the Companies' obligations hereunder and under the other DIP Documents are within its corporate powers, has been duly authorized by all necessary corporate action of the Companies, has received all necessary bankruptcy, insolvency or governmental approvals, and do not and will not contravene or conflict with any provisions of applicable law or of each Company's corporate charter or by-laws or of any agreements binding upon or applicable to the Companies or any of its properties;

(c)    the Chapter 11 Case has been duly authorized by all necessary legal and corporate action by or on behalf of the Companies and has been duly and properly commenced;

(d)    upon entry of the Financing Orders, this Note and each other DIP Document is the legal, valid and binding obligation, enforceable against the Companies in accordance with its terms except as limited by equitable principles relating to enforceability;

(e)    the Companies have good and marketable title to, or valid leasehold interests in, all of its property and assets; none of the properties and assets of the Companies are subject to any Liens other than Permitted Encumbrances;

(f)    no information contained in this Note, any of the other DIP Document, any projections, financial statements or collateral reports or other reports from time to time delivered hereunder or any written statement furnished by or on behalf of the Companies to the DIP Lender pursuant to the terms of this Note or otherwise contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading in light of all of the circumstances under which they were made;

(g)    the Liens granted to the DIP Lender, pursuant to the Collateral Documents and the Financing Orders are fully perfected Liens in and to the Collateral described therein, subject, as to priority, only to other Liens permitted to have such priority under the Financing Orders;

(h)    except for (i) proceedings previously disclosed to the DIP Lender by the Companies, and (ii) proceedings in the Chapter 11 Case in connection with the entry of the Financing Orders, no action, claim, lawsuit, demand, investigation or proceeding is now pending or, to the knowledge of the Companies, threatened against the Companies before any governmental authority or before any arbitrator or panel of arbitrators that challenges the rights or powers of the Companies to enter into or perform any of its obligations under the DIP Documents to which it is a party, or the validity or enforceability of any DIP Document or any action taken thereunder;

17

(i)    each Company is and will be at all times the owner of the Collateral free and clear of any lien, security interest or other charge or encumbrance except for the security interest created by this Note or any other DIP Documents and the other Permitted Encumbrances;

(j)    the execution, delivery and performance of this Note and the other DIP Documents will not (immediately or with the giving of notice or passage of time, or both) violate the articles of incorporation or bylaws of the Companies, or violate any law or regulation; and

(k)    except for the Chapter 11 Case, there is no order, notice, claim, litigation, proceeding or investigation pending or threatened against or in any way affecting (i) the Companies, whether or not covered by insurance, that would reasonably be expected to have a Material Adverse Effect or (ii) this Note or any other DIP Document.

17.    <u>Miscellaneous</u>.

(a)    All notices and other communications provided for hereunder shall be in writing (including facsimile communication) and mailed, emailed or delivered as follows:

| | |
|---|---|
| If to Borrowers | **Something Sweet Acquisitions, Inc.**<br>**Sweet Something, Inc.**<br>**[.]**<br>**[.]**<br>**Telephone: [.]**<br>**Email:  [.]** |
| with electronic copies to: | Bielli & Klauder, LLC<br>1204 N. King Street<br>Wilmington, DE 19801<br>Attn: David M. Klauder, Esq.<br>Telephone: (302) 803-4600<br>Email: dklauder@bk-legal.com |
| If to DIP Lender: | **Copenhagen Acquisition LLC**<br>**[.]**<br>**[.]**<br>**Attn: [.]**<br>**Telephone: [.]**<br>**Email: [.]** |

<table>
<tr><td>with electronic<br>copies to:</td><td>Morris Nichols Arsht and Tunnell, LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899-1347<br>Telephone: (302) 658-9200<br>Attn: Robert J. Dehney, Esq.<br>Attn: Tarik J. Haskins, Esq.<br>Email: rdehney@morrisnichols.com<br>Email: thaskins@morrisnichols.com</td></tr>
</table>

All such notices and communications shall, when mailed or sent by overnight courier, be effective when deposited in the mails or delivered to the overnight courier, as the case may be, or when sent by email be effective when confirmation is received.

(b)     The Companies shall reimburse the DIP Lender for all reasonable out-of-pocket costs and expenses incurred in connection with the negotiation and preparation of the DIP Documents and the obtaining of approval of the DIP Documents by the Bankruptcy Court (including the reasonable fees and expenses of outside counsel for the DIP Lender).  All fees payable hereunder and under the Note shall be paid in immediately available funds following any sale of all or substantially all of the Borrowers' assets.  Subject to the foregoing, the Companies shall reimburse the DIP Lender for all reasonable fees, costs and expenses, including the reasonable fees, costs and expenses of counsel or other advisors for advice, assistance, or other representation in connection with:

(i)     any amendment, modification or waiver of, consent with respect to, or termination or enforcement of, any of the DIP Documents or advice in connection with the administration of the Term Loans made pursuant hereto or its rights hereunder or thereunder;

(ii)     the review of pleadings and documents related to the Chapter 11 Case and any subsequent Chapter 7 case, attendance at meetings related to the Chapter 11 Case and any subsequent Chapter 7 case, and general monitoring of the Chapter 11 Case and any subsequent Chapter 7 case;

(iii)     any litigation, contest, dispute, suit, proceeding or action (whether instituted by the DIP Lender, the Borrowers or any other Person, and whether as a party, witness or otherwise) in any way relating to the Collateral, any of the DIP Documents or any other agreement to be executed or delivered in connection herewith or therewith, including any litigation, contest, dispute, suit, case, proceeding or action, and any appeal or review thereof, in connection with a case commenced by or against Borrower or any other Person that may be obligated to the DIP Lender by virtue of the DIP Documents, including any such litigation, contest, dispute, suit, proceeding or action arising in connection with any work-out or restructuring of the Term Loans during the pendency of one or more Events of Default;

(iv)     any attempt to enforce any remedies of the DIP Lender against the Borrowers or any other Person that may be obligated to the DIP Lender by virtue of any of the DIP Documents, including any such attempt to enforce any such remedies in the course of any work-out or restructuring of the Term Loans during the pendency of one or more Events of Default;

(v)     any work-out or restructuring of the Term Loans during the pendency of one or more Events of Default; and

(vi)     any efforts to (A) monitor the Term Loans or any of the other Obligations, (B) evaluate, observe or assess any of the Companies or its respective affairs, (C) verify, protect, evaluate, assess, appraise, collect, sell, liquidate or otherwise dispose of any of the Collateral and (D) monitor any sales;

including, as to each of clauses (i) through (vi) above, all attorneys' and other professional and service providers' fees arising from such services, including those in connection with any appellate proceedings, and all expenses, costs, charges and other fees incurred by such counsel and others in connection with or relating to any of the events or actions described in this Section 17(b), all of which shall be payable, on demand, by the Companies to the DIP Lender.  All expenses incurred by the DIP Lender shall receive super-priority administrative expense status per Section 364 of the Bankruptcy Code (subject to the Financing Orders).

(c)     No failure or delay on the part of the DIP Lender or any other holder of this Note to exercise any right, power or privilege under this Note and no course of dealing between Borrower and the DIP Lender shall impair such right, power or privilege or operate as a waiver of any default or an acquiescence therein, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies expressly provided in this Note are cumulative to, and not exclusive of, any rights or remedies that the DIP Lender would otherwise have. No notice to or demand on the Borrowers in any case shall entitle the Borrowers to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of the DIP Lender to any other or further action in any circumstances without notice or demand.

(d)     Borrower and any endorser of this Note hereby consents to renewals and extensions of time at or after the maturity hereof without notice, and hereby waive diligence, presentment, protest, demand and notice of every kind and, to the full extent permitted by law, the right to plead any statute of limitations as a defense to any demand hereunder.

(e)     If any provision in or obligation under this Note shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

(f)     The laws of the State of Delaware shall govern all matters arising out of, in connection with or relating to this Note, including, without limitation, its validity, interpretation, construction, performance and enforcement (including, without limitation, any claims sounding in contract or tort law arising out of the subject matter hereof and any determinations with respect to post-judgment interest), except to the extent that the application of the Bankruptcy Code is mandatory.

(g)     Each Borrower hereby waives personal service of any and all process upon it by the DIP Lender and consents that all such service of process may be made by registered mail (return receipt requested) directed to the Borrowers at its address set forth in Section 17(a) and

service so made shall be deemed completed five (5) days after the same shall have been so deposited in the mail of the United States of America. Nothing herein shall affect the right to serve process in any manner permitted by law or shall limit the right of any DIP Lender to bring proceedings against the Borrowers in the courts of any other jurisdiction. Each Borrowers waives any objection to jurisdiction and venue of any action instituted hereunder and shall not assert any defense based on lack of jurisdiction or venue or based upon forum non conveniens. Any judicial proceeding by the Borrowers against the DIP Lender involving, directly or indirectly, any matter or claim in any way arising out of, related to or connected with this Note or any related agreement, shall be brought in the Bankruptcy Court provided that if the Bankruptcy Court does not have jurisdiction, then only in a federal or state court located in the County of New Castle, State of Delaware.

(h)     Submission to Jurisdiction. Any legal action or proceeding with respect to any DIP Document over which the Bankruptcy Court does not have jurisdiction or any action described in this Note, shall be brought exclusively in the courts of the State of Delaware located in the County of New Castle, or of the United States of America for the District of Delaware and, by execution and delivery of this Note, each Borrower hereby accepts for itself and in respect of its properties and assets, generally and unconditionally, the jurisdiction of the aforesaid courts; provided that nothing in this Note shall limit the right of the DIP Lender to commence any proceeding in the federal or state courts of any other jurisdiction to the extent the DIP Lender determines that such action is necessary or appropriate to exercise its rights or remedies under the DIP Documents. The parties hereto hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens, that any of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions.

(i)     Each Borrower hereby irrevocably waives personal service of any and all legal process, summons, notices and other documents and other service of process of any kind by the DIP Lender and consents to such service in any suit, action or proceeding brought in the United States of America with respect to or otherwise arising out of or in connection with any DIP Document by any means permitted by applicable law, including by the mailing thereof (by registered or certified mail, postage prepaid) to the address of the Borrowers specified herein (and shall be effective when such mailing shall be effective, as provided therein). Each Borrower agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(j)     The Borrowers shall not have the right to assign its obligations or liabilities under this Note without the prior written consent of the DIP Lender in its sole discretion. The DIP Lender may grant participations to one or more entities in or to all or any part of, the amounts outstanding hereunder, and to the extent of any such participation (unless otherwise stated therein) the participant shall have the same rights and benefits hereunder as it would have if it were a DIP Lender hereunder.

(k)     No provision of this Note may be amended or waived unless such amendment or waiver is in writing and is signed by the Borrowers and the DIP Lender.

(l)      Any provision of this Note which is prohibited or unenforceable shall be ineffective to the extent such prohibition or unenforceability without invalidating the remaining provisions hereof.

(m)      This Note, the other DIP Documents, and all Liens created hereby or pursuant to the Collateral Documents or any other DIP Document shall be binding upon the Borrowers, the estate of the Borrowers, and any trustee or successor in interest of the Borrowers in the Chapter 11 Case or any subsequent case commenced under Chapter 7 of the Bankruptcy Code, and shall not be subject to Section 365 of the Bankruptcy Code.  This Note and the other DIP Documents and the Financing Orders shall be binding upon, and inure to the benefit of, the successors of the DIP Lender and their respective assigns, transferees and endorsees.  The Liens created by this Note, and the other DIP Documents shall be and remain valid and perfected in the event of the substantive consolidation or conversion of the Chapter 11 Case or any other bankruptcy case of the Companies to a case under chapter 7 of the Bankruptcy Code or in the event of dismissal of the Chapter 11 Case or the release of any Collateral from the jurisdiction of the Bankruptcy Court for any reason, without the necessity that the DIP Lender file financing statements or otherwise perfect its security interests or Liens under applicable law.

(n)      In the event of any inconsistency between the terms and conditions of this Note and the Financing Orders, the provisions of the Financing Orders shall govern and control.

(o)      THIS WRITTEN PROMISSORY NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

*      *      *      *      *

IN WITNESS WHEREOF, the Borrowers have caused this Note to be executed and delivered by their duly authorized officer as of the day and year and at the place first above written.

| | |
|---|---|
| | SOMETHING SWEET ACQUISITIONS, INC., as Debtor and Debtor in Possession<br><br><br>By:_____<br>    Name:<br>    Title:<br><br><br>SOMETHING SWEET, INC., as Debtor and Debtor in Possession<br><br>By:_____<br>    Name:<br>    Title: |

14399459.5

Acknowledged and Agreed

COPENHAGEN ACQUISITION LLC, as DIP Lender

By: _____
     Name:
     Title:

## EXHIBIT A

(attach Budget)

<u>Schedule 10</u>

Borrowers shall deliver (which delivery may be made by electronic communication (including email)) to the DIP Lender, items set forth below at the following times in form and substance satisfactory to the DIP Lender in its sole discretion:

| | |
|---|---|
| on Wednesday of each week for the period ending the preceding Friday beginning with the first Friday ending a full calendar week after the Petition Date, | a weekly DIP variance report/reconciliation for the prior week and for the period from the commencement of the Initial Budget to the end of the prior week in each case (i) showing actual results for the following items: (A) operating disbursements, and (B) professional fees and expenses, noting therein variances from values set forth for such periods in both the Initial Budget and the most recent Budget and (ii) an explanation for all material variances, certified by the chief financial officer of the Borrowers, |
| on Wednesday of each week beginning with the first full calendar week after the Petition Date, | a report of the balance of all of the deposit accounts of the Companies, including a breakdown of the balances of deposit accounts held at each depository institution, as of the close of business on the preceding Friday, |
| upon the request of the DIP Lender, | a revised proposed budget (it being understood that upon written approval of such proposed budget by the DIP Lender, in its sole discretion, such proposed budget shall become the "Budget") and timing changes with respect to any periods that were included in a previously delivered report and which shall be in form and substance acceptable to the DIP Lender, |
| promptly, but in any event at least two (2) business days prior to filing (except for emergency motions, which shall be delivered as promptly as possible prior to filing), | drafts of all pleadings, motions, applications or financial information (including any proposed order) filed or to be filed by the Companies with the Bankruptcy Court; <u>provided</u> that any such documents that are publicly available shall be deemed to have been delivered, |
| promptly, but in any event within 3 Business Days after Borrower has knowledge of any event or condition that constitutes a Default, | notice of such event or condition and a statement of the curative action that Borrower proposes to take with respect thereto, |
| upon the request of the DIP Lender, | any other information requested relating to the financial condition of the Companies or its Subsidiaries. |

**EXHIBIT D**

**Lien Priority Schedule**

|  | **Factor Priority Collateral & Proceeds Thereof** | **CES Priority Collateral & Proceeds Thereof** | **Property Unencumbered as of the Petition Date (including through avoidance)** | **Postpetition Collateral (Non-Proceeds Collateral)** |
|---|---|---|---|---|
| 1 | Carve-Out | Carve-Out | Carve-Out | Carve-Out |
| 2 | Factor Liens | CES Liens | Postpetition Liens | Postpetition Liens |
| 3 | CES Liens | Factor Liens | Adequate Protection Liens of Factor and CES (*Pari Passu*) | Adequate Protection Liens of Factor and CES (*Pari Passu*) |
| 4 | Subordinated Lender Liens | Subordinated Lender Liens | Adequate Protection Liens of Subordinated Lender | Adequate Protection Liens of Subordinated Lender |
| 5 | Postpetition Liens | Postpetition Liens | | |